388 P.2d 242

**Socorro EGURROLA, by her Guardian ad Litem, Jose Egurrola, and Jose Egurrola, individually, Appellants,**

**v.**

**John Anthony SZYCHOWSKI, a minor, John Frank Szychowski and Marian J. Szychowski, his wife, and Charles C. Christen, Appellees.**

**No. 7029.**

Supreme Court of Arizona.

In Division.

Jan. 10, 1964.

Powers & Rehnquist, by William H. Rehnquist, Phoenix, for appellants.

Cavanagh & O'Connor, by James H. O'Connor, Phoenix, for appellees.

UDALL, Chief Justice.

This appeal is from a verdict and judgment for the defendant in an action to recover damages for personal injuries. At approximately 12:30 A.M. on March 29, 1958, plaintiff Socorro Egurrola was a passenger in an automobile driven by defendant Christen. As the car proceeded east on Thomas Road, in Phoenix, Christen noticed defendant John Anthony Szychowski's car approaching from the south on 48th Street. Thomas Road was a protected thoroughfare at that point, stop signs being posted on 48th Street for both north and south-bound vehicles. Szychowski, however, did not stop. He ran the sign without slowing and was struck by the Christen car at right angles and with considerable force.

Neither driver was seriously hurt, but Socorro was thrown from the car and suffered severe injuries including extensive and permanent brain damage. She was hospitalized for six months and has since required constant nursing care at home. The uncontradicted evidence shows that she is unable to walk or dress herself; can feed herself only with difficulty, and cannot eat ordinary foods. She is apparently able to talk but cannot carry on an intelligible conversation. This condition will continue, with perhaps slight abatement in coming years, for the balance of her life.

Her father sued as guardian, and also in his own behalf for expenses incurred as a result of the injuries. Both drivers were named as defendants but the claim against Szychowski was compromised and dismissed before trial. Defendant Christen won a verdict in the court below and plaintiffs' motion for a new trial was denied.

The first question for decision is whether the court erred in modifying plaintiffs' requested instruction number 3 concerning the degree of care exacted of motorists on protected thoroughfares. As requested, the instruction read:

"Even though he [defendant Christen] had the right-of-way, he was under a duty to keep a proper lookout, and to yield the right-of-way to a motorist whom he knew *or should in the exercise of reasonable care have known,* was not going to yield the right-of-way." (Emphasis supplied.)

The court struck the italicized language, telling the jury that defendant's duty was to keep a lookout and yield to approaching motorists whom he *knew* would not respect his right-of-way. Plaintiffs argue that this was improperly confining; that the jury was effectively told that no matter how reckless his conduct, or how conspicuous the impending violation, Christen was not

liable if he failed to realize the danger. Such, of course, is not the law.

■ This court has on several occasions defined the duty of a driver on protected thoroughfares. His right-of-way is not absolute. He must maintain that degree of care which a reasonably prudent person would use to discover dangerous situations and avoid injury to others. Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201 (1949), relied on by defendant, is not authority to the contrary. The court there stated that the favored driver must yield "to a motorist when * * * [he] discovers that the motorist is not going to yield the right of way." Standing alone, the quoted language tends to support defendant's position. A close examination, however, reveals that the Nichols case is broader than defendant suggests. For example, the court relied on the following language taken from the Restatement of Torts, Section 449:

"'If the *realizable likelihood* that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.'" (Emphasis added.)

This statement is inconsistent with the notion that the favored driver need take action only when he is fully conscious that cross-traffic will not yield. The court in Henderson v. Breesman, 77 Ariz. 256, 269 P.2d 1059 (1954), cited Nichols for the proposition that: "[A] driver having the right of way * * * is still under an obligation to make that degree of observation * * * [which] a reasonably prudent person would have made under such conditions."

■ The same rule was stated in Casey v. Marshall, 64 Ariz. 232, 260, 168 P.2d 240, 169 P.2d 84 (1946), as the degree of care imposed upon a defendant by the "last clear chance" doctrine. See also, Odekirk v. Austin, 90 Ariz. 97, 366 P.2d 80, overruling Layne v. Hartung, 87 Ariz. 88, 348 P.2d 291 (1960). And we said in American Smelting & Refining Co. v. Wusich, 92 Ariz. 159, 375 P.2d 364 (1962): "[I]t must be shown that the defendant * * * realized or ought to have realized that the plaintiff was inattentive. * * *" The "last clear chance" doctrine characteristically applies only in cases involving contributory negligence. See Rollman v. Morgan, 73 Ariz. 305, 240 P.2d 1196, 32 A.L.R.2d 540 (1952). But a defendant's obligation to an innocent passenger can surely be no less than that to a plaintiff whose own negligence has imperiled his safety. The defendant was obliged, therefore, to remain alert and discover Szychowski's negligence if he could reasonably do so. This duty would have been made clear

by the requested instruction. It is true that the modified instruction advised the jury of Christen's duty to "keep a proper lookout." But this admonition was immediately neutralized by the statement that the defendant must "yield to a motorist whom he knew was not going to yield the right-of-way."

■ Defendant's contention that the deleted portion of the instruction was adequately covered elsewhere is without merit. The other instructions were either general ones, unrelated to the specific facts of this case, or were directed primarily to other issues with only incidental reference to the defendant's duty of care. We hold that it was prejudicial error to modify plaintiffs' requested instruction 3. The judgment must therefore be reversed and a new trial ordered.

Our decision on plaintiffs' first assignment of error disposes of the case. But another point was argued which presents important questions of law and which may be raised on retrial. For these reasons we proceed to consider plaintiffs' second assignment of error.

They contend that it was improper to exclude a letter from counsel for Szychowski's insurance carrier to the effect that $10,000 was the maximum limit of Szychowski's coverage. They had previously introduced a covenant not to sue Szychowski, which recited a consideration of $10,000.

Their position is that the introduction of this covenant was prejudicial to their claim for $250,000 against Christen, whose conduct was far less culpable than Szychowski's. They reason that the covenant, unexplained by letter, would imply some ill-defined or well-concealed defect in plaintiffs' case on the question of liability. This is entirely possible. If there was prejudice, however, they themselves were to blame. They had stipulated that the covenant might be admitted and proceeded to offer it on their own case in chief.

■ We are unable to accept the argument that the covenant, being admissible on the question of damages, would have been offered by defendant in any event and that plaintiffs should not be penalized simply for adopting the more expedient course of presenting it when Jose Egurrola took the stand. On the contrary, we think the covenant was not admissible. It is true that Christen could only be liable as a joint tort-feasor with Szychowski. Curlee v. Morris, 72 Ariz. 125, 231 P.2d 752 (1951); Nichols v. City of Phoenix, supra. And he was entitled to have the amount of the settlement applied in reduction of plaintiffs' damages. Fagerberg v. Phoenix Flour Mills Co., 50 Ariz. 227, 71 P.2d 1022 (1937). The application of such a credit, however, is properly accomplished by motion and hearing after the jury has returned its verdict. See De Lude v. Rimek, 351 Ill. App. 466, 115 N.E.2d 561 (1953); Ramsey

v. Camp, 254 N.C. 443, 119 S.E.2d 209 (1961). The court in De Lude, stating the reasons for adopting this procedure, said:

"It is well understood by lawyers and judges experienced in such matters that in a case where evidence is offered of the payment of a substantial sum for a covenant not to sue, the jury considers it evidence that the covenantee is the party responsible for the injury, and that defendant or defendants should be exculpated. * * * While the amount paid * * * should be deducted from the total damages sustained, we hold it is the function of the jury to find the plaintiff's total damages, and the function of the judge, upon application of the defendant after verdict, to find the amount by which such verdict should be reduced * *."

Plaintiffs now seek to rebut the unfavorable inferences flowing from their introduction of the covenant, by showing that they settled for the maximum amount of Szychowski's insurance. References to insurance are ordinarily considered irrelevant. Mueklebach v. Mercer Mortuary and Chapel, Inc., 93 Ariz. 60, 378 P.2d 741 (1963). And they contain, as well, an element of prejudice to defendants. Plaintiffs could not, by the improper introduction of the covenant not to sue, make the matter of insurance relevant and thereby turn their own misconduct to their advantage. The letter was thus properly excluded.

For the reasons given in the first part of this opinion, the judgment is reversed and remanded to the trial court with directions to grant plaintiffs' motion for a new trial.

Reversed.

BERNSTEIN and STRUCKMEYER, JJ., concur.