IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| VIRGINIA LYNN HENRY, on behalf of the Estate of KATHLEEN S. WILSON, deceased, | ) ) ) ) | |
| Plaintiff/Appellee, | ) ) | 2 CA-CV 2000-0136 |
| v. | ) ) | DEPARTMENT A |
| HEALTHPARTNERS OF SOUTHERN ARIZONA, dba TUCSON MEDICAL CENTER, | ) ) ) ) | O P I N I O N |
| Defendant/Appellant. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-324589

Honorable Nanette M. Warner, Judge

AFFIRMED

Law Offices of Ronald D. Mercaldo, Ltd.
  By Ronald D. Mercaldo                                                Tucson
                                                Attorneys for Plaintiff/Appellee

Smith Law Group
  By Christopher J. Smith and Roger W. Perry                          Tucson
                                                Attorneys for Defendant/Appellant

F L Ó R E Z, Judge.

**¶1** Virginia Henry filed this medical malpractice action as personal representative of the estate of her aunt, Kathleen Wilson. All defendants except appellant HealthPartners of Arizona, doing business as Tucson Medical Center (TMC), settled the case before trial. A jury rendered a verdict in favor of TMC, and the trial court later granted Henry's motion for a new trial. TMC challenges that ruling on appeal. For the reasons set forth below and in a separate memorandum decision that addresses other issues not worthy of publication, *see* Rule 28(g), Ariz. R. Civ. App. P., 17B A.R.S., we affirm.

## BACKGROUND

**¶2** In July 1995, Wilson was examined by her gynecologist, Dr. Jon Long, at his office. Nothing in the medical record on that date shows that Wilson reported any lumps in her breast or that Long had detected any lumps while conducting a breast examination. In August 1995, Wilson had a routine screening mammogram at TMC. A screening mammogram requires a technician to x-ray each breast twice from different angles; this method is used when the person has reported no breast problems. If the screening mammogram reveals problems or if the person reports problems, a diagnostic mammogram is used. A diagnostic mammogram requires x-rays with other views of the breast, including magnification as needed. To complete a diagnostic mammogram, a radiologist examines all x-rays taken in both mammograms.

**¶3** A TMC volunteer who conducted the intake interview for Wilson's screening mammogram wrote on the mammography information sheet, "*lump—x6 weeks." That sheet was placed in Wilson's medical chart. The mammography technologist also wrote, "'Dr. Long thinks it's fibrous tissue', patient states," on Wilson's clinical history form. The screening mammogram x-rays, the results of Wilson's 1992 mammogram, the clinical history form, and the medical chart

2

were placed near the diagnostic x-rays for Dr. Donald Mar to read. He was employed by Radiology Limited, with whom TMC had contracted to provide radiology services. When Mar read Wilson's screening x-rays, he noted: "Normal mammogram, except for moderate to severe increased density. No evidence of cancer. It should be appreciated that a negative mammogram should not supersede clinical concern if present. No significant change from 12/11/92." He did not read the mammography technologist's note or the information sheet in Wilson's clinical history record. On the patient notification form, Mar wrote, "No mammographic evidence of cancer." TMC sent Wilson a letter stating her mammogram result was normal.

¶4        During the next ten months, Wilson continued to see Long, but the medical records do not mention breast lumps or problems. Then, in May 1996, Wilson told Long that she had had a sore, tender lump in her breast for about a month. On a referral from Long, TMC did a diagnostic mammogram, which revealed that Wilson had breast cancer. The next day, Wilson underwent a mastectomy, which was followed by chemotherapy treatment. The cancer metastasized, however, before the full course of chemotherapy could be completed. Wilson died in April 1997. Henry then brought this action.

¶5        Henry settled with Mar and Long immediately before trial. On the first day of trial, TMC mentioned in its mini-opening statement to the potential jurors that "[Henry had] originally sued [Long and Mar]. You do not see them in the courtroom today." Henry immediately moved for a mistrial on the ground TMC was "talk[ing] about prior settlements." The trial court granted the motion for mistrial and issued what it characterized as the "rule in the case":

> Okay, rule in the case: No mentioning settlements, who were previously parties in the case. You can in your mini-opening, opening and closing say, the[y] are the really bad guys. That's who

3

> you should find to be responsible on the verdict forms. You put zero by TMC, you put 50/50, whatever you want, in those other things. Okay.

After some discussion about the ambit of the rule in the case, the trial court summoned a new panel of prospective jurors and began the trial again. Based on our review of the record, we conclude the parties understood the "rule in the case" to be that they were not to mention prior settlements to the jury or to identify former parties as such.

## READING OF ALLEGATIONS IN COMPLAINT

¶6 TMC asked the trial court for permission to read to the jury Henry's allegations in her complaint that Mar had been negligent in causing Wilson's death. Henry had alleged that Mar had been negligent in failing to "order the appropriate diagnostic studies," to "appropriately evaluate Ms. Wilson's complaints," and "to diagnose Ms. Wilson's breast cancer." Although the court initially denied the motion, near the end of Henry's case-in-chief, the trial court announced to the parties that it planned to grant TMC's request and read the allegations because it agreed with TMC that Henry's allegations were "admission[s]." After all the evidence was presented and immediately before TMC rested its case, the trial court read the aforementioned allegations.

¶7 Relying on *Egurrola v. Szychowski*, 95 Ariz. 194, 388 P.2d 242 (1964), and *Dunn v. Maras*, 182 Ariz. 412, 897 P.2d 714 (App. 1995), Henry argues that, practically speaking, by reading the complaint in which she had asserted that Mar had been negligent, the trial court improperly told the jury she had settled her claims against Mar. TMC counters that the allegations in Henry's complaint were admissions of a party opponent under Rule 801(d)(2), Ariz. R. Evid., 17A A.R.S., and that the trial court properly read the allegations to the jury. Rule 801(d)(2) states in pertinent part as follows:

4

(d) **Statements which are not hearsay.**  A statement is not hearsay if—

. . . .

(2)  *Admission by party-opponent.*  The statement is offered against a party and is . . . (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment.

To obtain admission of a statement under Rule 801(d)(2)(D), its proponent "must show only that the statement:  (1) was made by the opposing party's agent or servant, (2) was made during the existence of the relationship, and (3) concerned a matter within the scope of the agency or employment."  *Shuck v. Texaco Ref. & Mktg., Inc.*, 178 Ariz. 295, 298, 872 P.2d 1247, 1250 (App. 1994).  For example, the opening statement of plaintiff's counsel in *Copeland v. City of Yuma*, 160 Ariz. 307, 772 P.2d 1160 (App. 1989), was found to have met the requirements of Rule 801(d)(2)(D).  Similarly, concessions by a party's attorney during oral argument to a trial court may be considered statements adverse to the party.  *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 871 P.2d 698 (App. 1993).  And a declarant need not "have personal knowledge of the matter asserted in the statement" for it to be admissible.  *Shuck*, 178 Ariz. at 299, 872 P.2d at 1251.  Such evidence may emanate from the pleadings of a party, whether signed by the client or the attorney.  *Buehman v. Smelker*, 50 Ariz. 18, 68 P.2d 946 (1937).  And, finally, in *Reed v. Hinderland*, 135 Ariz. 213, 216, 660 P.2d 464, 467 (1983), the court held that a letter by plaintiff's counsel stating that plaintiff's son had caused the accident was "properly admitted for

5

the legitimate purpose of attacking the credibility of [plaintiff's] testimony as to the cause of the accident."

¶8        Contrary to Henry's argument, *State v. Fulminante*, 193 Ariz. 485, 975 P.2d 75 (1999), did not nullify the holding in *Reed*. *Fulminante* is simply inapposite here. As TMC points out, the prosecutor's statements in the first trial in *Fulminante* were held not to be admissible at retrial because additional factual evidence was available at the time of retrial. Here, Henry's allegations reflected her view of Mar's negligence. We have found no Arizona case undermining *Reed*.

¶9        We conclude, then, that Henry's factual allegations in her complaint supporting her claim that Mar had been negligent are evidentiary admissions, albeit that they are disputed and are not, in and of themselves, conclusive evidence of Mar's fault. *See Starkovich v. Noye*, 111 Ariz. 347, 529 P.2d 698 (1974) (when proper foundation established, statement in complaint is admission against interest); Joseph M. Livermore et al., *Law of Evidence* § 801.5 (4th ed. 2000) (discussing admissibility under Rule 801(d)(2)(D)); *see also Bank of America Nat'l Trust & Sav. Ass'n v. Maricopa County*, 196 Ariz. 173, 993 P.2d 1137 (App. 1999) (bank's pleadings and admission in tax court were evidentiary admissions even though not judicial admissions). "The time has passed when allegations in a pleading will be treated as mere fictions, rather than 'as statements of the real issues in the cause and hence as admissions of the parties.'" *Dreier v. Upjohn Co.*, 492 A.2d 164, 168 (Conn. 1985), *quoting* 2 Jones, *Evidence* 693 (5th ed.). *Cf. Dugan v. EMS Helicopters, Inc.*, 915 F.2d 1428 (10th Cir. 1990) (inconsistent allegations in prior pleadings admissible); *Redwing Carriers, Inc. v. Stone*, 310 So. 2d 206 (Ala. 1975) (reversible error not to admit into evidence party's previous complaint against third party whom plaintiff

6

alleged had been responsible for its injuries); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 370 N.E.2d 941 (Ind. Ct. App. 1977); *McWilliams v. Szymanski*, 792 P.2d 457 (Or. Ct. App. 1990); *but see Lytle v. Stearns*, 830 P.2d 1197 (Kan. 1992) (acknowledging split of authority in comparative negligence cases on admissibility of pleadings alleging negligence against defendants who have been dismissed and finding error in admitting statements in prior pleading). Because Henry's agent made the allegations during the time he represented her in the lawsuit against Mar, the allegations were admissible under Rule 801(d)(2)(D). *See Shuck*.

¶10 Henry's factual allegations against Mar were also admissible because they were relevant nonhearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ariz. R. Evid. 801(c). TMC did not offer Henry's complaint allegations for their truth—that Mar had indeed been negligent. Instead, TMC offered them to discredit Henry's claim at trial that Mar's negligence had been, at most, minimal. Because we have determined that Henry's complaint allegations were admissible under Rule 801(d)(2)(D) as nonhearsay, we need not consider whether they were also admissible under Rule 801(d)(2)(B) and (C).

¶11 After the trial court read Henry's allegations about Mar's negligence to the jury, TMC used the allegations to discredit the theory of the case that Henry had presented throughout trial, namely, that Mar had been, at most, minimally negligent in failing to review Wilson's medical record, including the clinical history TMC's mammography technologist had prepared. Because TMC had named Mar as a nonparty at fault, it was entitled to offer Henry's own words in her complaint to essentially impeach her claim at trial that Mar had been, at most, minimally negligent. To rule otherwise would allow Henry to have her proverbial cake and eat it too—that

7

is, she would be permitted to reap the benefits of her allegations of negligence against Mar on the one hand, yet minimize his fault in a trial against the only remaining defendant and place all blame on TMC for Wilson's death.

¶12      We also reject Henry's claim, based on *Egurrola* and *Dunn*, that, by reading the allegations to the jury, the trial court improperly informed it of Henry's settlement with Mar. In *Egurrola,* plaintiff had sued the driver of the car in which she had been a passenger for the injuries she had suffered in an accident involving another vehicle. Pursuant to the parties' stipulation, plaintiff introduced into evidence a covenant in which she had agreed not to sue the driver of the other car in exchange for $10,000. She then sought unsuccessfully to introduce a separate letter from that driver's attorney stating the coverage limit on the driver's automobile liability policy was $10,000, fearing that introduction of only the covenant, "unexplained by [the] letter, would imply some ill-defined or well-concealed defect in the plaintiffs' case on the question of liability." *Egurrola*, 95 Ariz. at 198, 388 P.2d at 244. The supreme court noted that the plaintiff's predicament had arisen from *her* introduction into evidence of the covenant, which was not otherwise admissible. It was inadmissible, the court ruled, based on the principle of joint tortfeasor liability.[1] The court explained that the proper method of accounting for settlement proceeds is to subtract them from the total damages awarded by the jury. Thus, nothing in *Egurrola* renders inadmissible Henry's allegations in her complaint about Mar's negligence.

¶13      *Dunn* is similarly inapplicable. It involved a juror's improper communication of extraneous information to other jurors that the plaintiff had settled his case against a former

---

[1]*Egurrola* was decided long before comparative fault was the law in Arizona. *See* A.R.S. § 12-2505; 1984 Ariz. Sess. Laws, ch. 237, § 7.

8

defendant. Division One of this court ruled that the "reasonable possibility standard" for evaluating a claim that a jury purportedly has received extraneous information applies in both civil and criminal cases, concluding that the trial court had erred in evaluating the jurors' affidavits for potential prejudice. 182 Ariz. at 421, 897 P.2d at 723. In *Dunn*, the focus was the extraneous information one juror had provided the others, not the fact of settlement. Thus, neither *Egurrola* nor *Dunn* resolves the question before us.

¶14 Rule 408, Ariz. R. Evid., permits admission of the fact of settlement in certain circumstances. It states, in relevant part: "This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness." In this case, Henry's trial strategy was to create a bias in favor of Mar and against TMC. The fact that Henry had settled her case against Mar provided an explanation for his absence at trial, causing TMC then to assert he was a nonparty at fault because of his failure to read the clinical history notes. Thus, the allegations of Henry's complaint were evidence of her "knowledge and state of mind with respect to the merits of the wrongful death action filed against [TMC]." *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 420, 758 P.2d 1313, 1322 (1988). The complaint's allegations do not fall within Rule 408's purview because they were not made in compromise of a disputed claim. In any event, litigants must be held "accountable for setting forth one version of the facts to obtain a settlement and describing another version at trial." *Hernandez v. State*, No. CV-01-0437-PR, ¶14, 2002 WL 1969884, ¶14 (Ariz. Aug. 26, 2002). Rule 408 did not preclude TMC's use of the allegations in Henry's complaint to undermine her trial strategy.

¶15 Henry next argues that these allegations were inadmissible because they were irrelevant and unfairly prejudicial. Only relevant evidence is admissible at trial. Ariz. R. Evid.

9

402.  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Ariz. R. Evid. 401.  Because Henry's trial strategy was to minimize Mar's fault to defeat TMC's assertion that he had been at fault, Henry's allegations delineating Mar's negligence were clearly relevant in undercutting that strategy.  *See Dreier*, 492 A.2d at 168 ("Given that the statements [in the plaintiff's original complaint] have some probative value, we believe that the circumstances under which they are made, as with any other 'admission,' go to the weight to be accorded the statements rather than their admissibility."); *McWilliams*.

### GRANT OF MOTION FOR NEW TRIAL

¶16        Following the unanimous jury verdict in favor of TMC, Henry moved for a new trial on the ground that the trial court's reading of the allegations in her complaint had been improper.  The trial court granted the motion, explaining in a detailed minute entry that its initial decision to read to the jury the allegations in Henry's complaint had been based on its conclusion that the allegations were judicial admissions under *Brenteson Wholesale, Inc. v. Arizona Public Service Co.*, 166 Ariz. 519, 803 P.2d 930 (App. 1990).  But the court subsequently concluded that the allegations were not judicial admissions and that its reading them had invited the jury to conclude that Henry and Mar had reached a settlement, contrary to the law in this state that information about settlements be kept from juries.  *See* Ariz. R. Evid. 408.  The court also ruled that reading the allegations was more prejudicial than probative under Rule 403, Ariz. R. Evid.  Absent a clear abuse of discretion, we will not disturb a trial court's grant of a motion for new trial, particularly when based on the admission or exclusion of evidence.  *Gordon v. Liguori*, 182

10

Ariz. 232, 895 P.2d 523 (App. 1995); *see also Koepnick v. Sears Roebuck & Co.*, 158 Ariz. 322, 762 P.2d 609 (App. 1988).

¶17        Henry asserts she was prejudiced by the timing of the trial court's decision to read the allegations in the complaint to the jury.  Henry notes that, before empaneling the jury, the trial court had stated the parties could not mention any settlements with nonparties or identify those "who were previously parties in the case," but they were not precluded from mentioning in their mini-opening statements, opening statements, and closing arguments that others had been the "really bad guys.  That's who you should find to be responsible on the verdict forms."  Henry contends that changing this "rule in the case" near the end of her case-in-chief gave TMC a basis for arguing that she had been "dishonest with the jury."  TMC responds that Henry had painted herself into a corner by taking the position at trial that Mar had not been at fault and claiming "that TMC was trying to avoid responsibility by trying to blame Dr. Mar."  In its minute entry granting Henry's motion for new trial, the trial court stated:

> While the jury was not advised that there was a settlement between [Henry] and Dr. Mar, [Henry's] expert stated that Dr. Mar was negligent.  It would not be a giant leap for the jury to infer that because Dr. Mar was sued by [Henry], [and Henry's] expert stated that Dr. Mar was negligent, . . . there had been a settlement between [Henry] and Dr. Mar for some undisclosed amount.  This alone has a prejudicial effect.  Thus,
>
> THE COURT FINDS THAT the fact that Dr. Mar had been a party defendant is not relevant to [Henry's] claims against T.M.C.

The trial court's finding of nonrelevance, however, ignores a defendant's right to place blame on a nonparty, *see* A.R.S. § 12-2506, and, as noted in paragraph 15 above, overlooks the probative value of the factual allegations against Mar in Henry's complaint.  TMC, then, was permitted to

11

name Mar as a nonparty at fault and to argue that he had been negligent and that Henry had so alleged in her complaint.

¶18 Still, we must review the trial court's conclusions in granting a new trial that reading Henry's allegations of negligence against Mar had unfairly prejudiced Henry and that the unfair prejudice substantially outweighed any probative value under Rule 403. As TMC notes, an admission by a party opponent is, by its very nature, prejudicial to the party against whom it is admitted. "Relevant evidence generally will adversely affect the party against whom it is offered, but that is not the type of prejudice of which Rule 403 speaks." *Yauch v. Southern Pac. Transp. Co.*, 198 Ariz. 394, ¶28, 10 P.3d 1181, ¶28 (App. 2000). But relevant evidence is inadmissible under Rule 403 if it "has an undue tendency to suggest decision on an improper basis, such as emotion, sympathy, or horror." *State v. Mott*, 187 Ariz. 536, 545, 931 P.2d 1046, 1055 (1997). Although Henry was undoubtedly prejudiced by the trial court's reading of the allegations, we cannot say that the jury was encouraged by that reading to decide the case on the basis of emotion, sympathy, or horror. Under the unique circumstances of this case, we conclude the trial court did not err in reading the allegations of the complaint to the jury.

¶19 Even so, for the reasons stated below, we conclude that the trial court did not abuse its discretion in granting a new trial. *See Gordon*; *Linder v. Brown & Herrick*, 189 Ariz. 398, 943 P.2d 758 (App. 1997) (appellate court may affirm for reasons other than those relied upon by trial court). We base this conclusion on Rule 59(a), Ariz. R. Civ. P., 16 A.R.S., Pt. 2, which states:

> A verdict, decision or judgment may be vacated and a new trial granted on motion of the aggrieved party for any of the following causes materially affecting that party's rights:

1. Irregularity in the proceedings of the court, referee, jury or prevailing party, or any order or abuse of discretion, whereby the moving party was deprived of a fair trial.

. . . .

6. Error in the admission or rejection of evidence, error in the charge to the jury, or in refusing instructions requested, or other errors of law occurring at the trial or during the progress of the action.

¶20 The trial court's "rule in the case" set out a framework for the trial, and the parties made strategic decisions accordingly. Having been told there would be no mention of settlement or identification of nonparties as previous parties to the case, Henry adopted a strategy that minimized Mar's culpability. Only after she had presented such a case did the trial court, persuaded by TMC that the complaint's allegations were admissible, reverse itself. As the trial court recognized in its order granting Henry's motion for new trial, the timing of its reading of the allegations unfairly prejudiced Henry. Thus, there was, essentially, an "[e]rror in the admission or rejection of evidence" that resulted from the timing of the admission of the evidence. Ariz. R. Civ. P. 59(a)(6). Therefore, we cannot say that the trial court abused its discretion in granting Henry a new trial.[2]

**DISPOSITION**

¶21 Accordingly, we affirm the trial court's grant of Henry's motion for new trial.

_____

[2]We do not address the trial court's reference to Rule 59(a)(7), Ariz. R. Civ. P., 16 A.R.S., Pt. 2, because it appears to be superfluous to the court's decision. TMC so asserts in its opening brief, an assertion to which Henry did not respond. Thus, we deem the issue conceded. *See In re 1996 Nissan Sentra*, 201 Ariz. 114, 32 P.3d 39 (App. 2001).

M. JAN FLÓREZ, Judge

CONCURRING:

_____
J. WILLIAM BRAMMER, JR., Presiding Judge


_____
JOHN PELANDER, Judge

14