IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CINDY REYES, et al., *Plaintiffs/Appellees,*

*v.*

TOWN OF GILBERT, *Defendant/Appellant.*

No. 1 CA-CV 18-0359
FILED 7-25-2019

Appeal from the Superior Court in Maricopa County
Nos. CV2013-016971
CV2015-004464
CV2015-006176
(Consolidated)
The Honorable Dawn M. Bergin, Judge

**REVERSED AND REMANDED WITH DIRECTIONS**

COUNSEL

Breyer Law Offices, P.C., Phoenix
By Mark P. Breyer, Edward M. Ladley, Brian C. Fawber
*Counsel for Plaintiffs/Appellees*

Grasso Law Firm, P.C., Chandler
By Robert Grasso, Jr., Kim S. Alvarado, Stephanie L. Samuelson
*Counsel for Defendant/Appellant*

_____

**OPINION**

_____

Presiding Judge Lawrence F. Winthrop delivered the opinion of the Court, in which Judge Kent E. Cattani and Judge Diane M. Johnsen joined.

_____

**W I N T H R O P**, Judge:

¶1        In this personal injury action, a jury trial resulted in a defense verdict in favor of the Town of Gilbert ("the Town"). The plaintiff, Joseph Reyes ("Reyes"), then moved for a new trial, which the superior court granted, finding the Town had violated Arizona Rule of Civil Procedure ("Rule") 26.1. The Town appeals the court's new-trial order. For the following reasons, we reverse the order for a new trial and direct the superior court on remand to reinstate the jury verdict in favor of the Town.

**FACTS AND PROCEDURAL HISTORY**

   *I.        The Underlying Incident*

¶2        Reyes suffered injuries in a single-car accident in which Albert Lopez was the driver. On the night of May 18, 2013, Reyes, then sixteen years old, went with some friends to an unsupervised party in Chandler, where they drank a substantial amount of alcohol. Lopez arrived at the party after midnight. He had been drinking alcohol throughout the day, and he had also smoked marijuana and used cocaine.

¶3        At approximately 1:00 a.m., Lopez announced the party was moving to his house. Lopez and three other teenagers, including Reyes, got into Lopez' truck. The truck sped eastbound on Ocotillo Road, ran a stop sign at the Greenfield Road intersection, and continued recklessly speeding through a residential subdivision. Two passengers, including Reyes, asked Lopez to slow down, but he did not do so, even after the pavement ended and Ocotillo Road transitioned to a narrow dirt path/road. Instead, Lopez continued on; the passengers later estimated the truck was going between sixty and ninety miles per hour.

¶4        A canal intersected the road 765 feet east of the end of the pavement. As Lopez continued toward the canal, he eventually braked, but was unable to stop. The truck vaulted the canal and slammed into the east embankment.

¶5        Lopez, who had a blood alcohol level of .198 and tested positive for cocaine, later testified he could not remember the crash or driving after leaving the party.[1]  Reyes, who was not wearing a seatbelt, was seriously injured in the crash.

II.     *The Legal Proceedings*

¶6        In December 2013, Reyes' mother, Cindy, timely filed a complaint, individually and on behalf of her minor son, naming numerous defendants, including the Town.  The complaint alleged the Town was negligent because it "failed to properly light the area, provide signage on the road or have adequate warnings to alert travelers that Ocotillo Road was ending and that an open canal existed across the roadway" at the end of the dirt road.

¶7        By the time of trial, Reyes had turned eighteen and the only claim remaining was his negligence claim against the Town.  During the course of the litigation, Reyes filed twenty-four supplemental Rule 26.1 disclosure statements, and in each he continued to allege as the basis for his claim that the Town had "failed to properly light the area, provide signage on the road or have adequate warnings to alert travelers that Ocotillo Road was ending and that an open canal existed across the roadway."

¶8        Before trial, the superior court granted the Town's unopposed motion to exclude the expert testimony of Todd Springer, Reyes' "lighting expert."  Reyes thereafter proceeded on a single liability theory—that the Town was negligent in maintaining Ocotillo Road east of Greenfield Road. Relying on a traffic engineering expert, Dr. Robert Bleyl, Reyes argued that the Town failed to provide proper warning signs and that this failure was a cause of his injuries.  Specifically, Dr. Bleyl opined that the Manual on Uniform Traffic Control Devices ("MUTCD") required the Town to place diamond-shaped reflective objects, known as Type 4 markers, in certain areas to warn drivers they were approaching a hazard.

¶9        Shortly before trial, the parties filed their Joint Pretrial Statement, and Reyes filed an Amended Joint Pretrial Statement.  In each, Reyes alleged as his sole theory of liability that the Town "fail[ed] to follow the standard of care and state law requiring specific signage or barriers to warn of a canal that sits where Ocotillo [Road] ends."

---

[1]        Lopez eventually pled guilty to three counts of aggravated assault, each a class three felony, and was sentenced to 7.5 years' imprisonment. *See* Maricopa County Case No. CR2013-429645.

¶10 The superior court addressed numerous pretrial motions *in limine*, including a motion by the Town to preclude Reyes "from offering testimony or written documentation and questioning witnesses concerning other possible ways that the Town was 'negligent' because such other 'negligence theories' go beyond the opinions of [Dr. Bleyl]."[2] The Town noted Dr. Bleyl's opinions had "focused on whether the Town adequately warned [] Lopez that the roadway ended and a canal was ahead,"[3] but asserted Reyes had nonetheless "implied that the Town was negligent in other ways, including: (1) the lack of lighting along the dirt area or at the canal; (2) the lack of fencing/barriers before the canal; (3) other types of signage not [testified to by Dr. Bleyl in his March 31, 2016 deposition]; and (4) not constructing an overpass over/across the canal." The Town argued Reyes "should not be permitted to argue negligence theories . . . on issues that even [Reyes'] own expert does not identify as negligence." In response, Reyes argued he should be "allowed to discuss the MUTCD and demonstrate that Type 4 signage was required (and not used) and Type 3 barriers were to be considered (but were not used) by the [Town]." Reyes conceded he had "no claim" "about the lighting on Ocotillo [R]oad approaching the canal where this incident occurred," but also argued he should be allowed to speculate about the benefits of an overpass over the canal. The superior court granted the Town's motion *in limine* "excluding evidence of other negligence theories" and ruled that Reyes' "negligence theories shall be limited to those contained in [his] expert disclosures or depositions."

¶11 The case went to trial in December 2016. Consistent with his written report and disclosed opinions, Dr. Bleyl testified that the MUTCD required the Town to place Type 4 markers on Ocotillo Road east of Greenfield Road to warn drivers they were approaching a hazard. The Town called Dr. Andrzej Kwasniak, a traffic and transportation operations engineer, to rebut Dr. Bleyl's opinions. As disclosed during discovery, Dr.

---

[2] Although Dr. Bleyl had performed accident reconstructions in other cases, he did not do so in this case. Instead, he submitted a written report that relied upon the Gilbert Police Department's crash report, a site visit he made two months after the crash, twenty photographs taken during the site visit, and the MUTCD.

[3] Specifically, Dr. Bleyl opined the Town should have: (1) removed the "Not a Thru Street" warning sign along the paved portion of Ocotillo Road; (2) replaced it with a "Dead End" or "No Outlet" sign; and (3) placed five or six diamond-shaped object markers, spaced ten feet apart, across the dirt road before it intersected the canal.

Kwasniak had conducted on-site traffic counts on two days in September 2015 and used the data he gathered about the volume and speeds of the traffic to conclude that the existing signage, or lack of it, on Ocotillo Road did not render the road unreasonably unsafe. Consistent with its pretrial disclosures, the Town's primary defense was that the May 2013 accident was caused by Lopez' reckless intoxicated behavior, and that Reyes' own reckless behavior contributed to his injuries.

¶12 The jury returned a defense verdict. In January 2017, the superior court entered judgment in favor of the Town.

¶13 Reyes then moved for a new trial pursuant to Rule 59(a)(1)(B), Ariz. R. Civ. P., alleging the Town committed misconduct by failing to disclose a 2003 traffic impact study involving some of the area at issue ("the 2003 TIS"). That study had been completed by Kenneth Howell, an engineer with TASK Engineering, under contract with a potential developer who in 2003 was considering building a subdivision (the "Freeman Farms development"). Reyes asserted that, approximately ten months before trial, he had sent a public records request to the Town asking for "[a]ll field reviews and traffic studies for Ocotillo Road east of Greenfield until the Canal that is Town of Gilbert right of way," and that, in responding, the Town had failed to provide the 2003 TIS, but instead stated it had already provided a general study of the area, and further stated, "The Town's responses to these requests are complete."[4] Reyes argued that the 2003 TIS, which was conducted before residential

---

[4] Reyes had previously deposed former Town engineer Michael Gillespie pursuant to Rule 30(b)(6), Ariz. R. Civ. P., on how the Town (1) developed, (2) planned or designed for artificial lighting on, and (3) planned or placed signage on the dirt access road. In advance of that deposition, and although it did not actually develop the dirt access road, the Town voluntarily disclosed its file related to the Freeman Farms development ("the Development File"). The Town produced Gillespie for the deposition in January 2015. After the deposition, Reyes made a formal request for production in February 2015, and in response, the Town produced its 2004 Arterial Street Plan, a document Gillespie had referenced in his deposition. The Town also disclosed documents related to its 2009 acquisition of the right-of-way of the subject area on Ocotillo Road. Reyes' examination of Gillespie did not touch on any traffic impact studies or related numbers; the request for production likewise did not seek disclosure of traffic impact studies, much less the 2003 TIS. Approximately one year later, Reyes made his public records request.

subdivision development in the area, had estimated significantly greater traffic than that observed by Dr. Kwasniak and "undermines the entire basis of the testimony of [Dr. Kwasniak]."[5]

¶14      The Town responded by arguing in part that the 2003 TIS had nothing to do with signage or Dr. Bleyl's opinions, was "wholly irrelevant to the disputed negligence and causation issues before the jury," and "had no impeachment value."[6]  The Town noted that, at trial, Reyes had argued only that the Town should have conducted a specific study to determine whether to install Type 4 object markers and should have documented its reasons for ruling out such signs in order to justify its decision to "deviate" from the MUTCD.[7]  The Town argued Reyes was confusing a pre-subdivision construction traffic impact study such as the 2003 TIS, which has nothing to do with signage and would have had no impact on Reyes' disclosed liability theory, with a post-construction "traffic study" that

---

[5]      When later deposed as a result of the motion for new trial, however, Howell testified that Dr. Kwasniak's traffic count "look[ed] consistent" with the 2003 TIS.

[6]      The Town also argued in part that (1) the 2003 TIS was based on "decade-old traffic counts" that had "nothing to do with the existing condition of the roadway, negligence, or causation," (2) the Development File the Town had disclosed before the Gillespie deposition included comments from the Town's traffic engineer concerning specific pages of the 2003 TIS, putting Reyes on notice of the existence of the 2003 TIS, (3) Reyes' public records request was "outside of pending litigation" and not a request pursuant to Rule 34, Ariz. R. Civ. P., and (4) the 2003 TIS was not directly relevant because it did not measure traffic on the dirt area in front of the farm fronting Ocotillo Road after the paving stopped (which Dr. Kwasniak measured as six vehicles per day), and the configuration of the streets intersecting Ocotillo Road (and feeding traffic) was different in 2003 than in 2015, when Dr. Kwasniak conducted his traffic survey.

[7]      The Town noted Reyes' negligence theories had been a "moving target" involving various types of signage, both before and during trial. Dr. Bleyl initially testified the Town was required to install a Type 1 (or possibly a Type 3) object marker, but then testified the Town could install "[T]ype 4 object markers or [T]ype 1 object markers, depending on how you would've defined is this an end of a roadway or does the roadway continue across the canal further to the east of Ocotillo Road continuing."

would involve design drawings and plans for signage and required an engineer's judgment.[8]

**¶15** The superior court heard oral argument in June 2017 on Reyes' motion for new trial, concluded that the 2003 TIS should have been disclosed, and then entered an order allowing Reyes to (1) depose the individual who prepared the 2003 TIS (Howell), and (2) submit a declaration after the deposition from Dr. Bleyl analyzing any possible impact the 2003 TIS might have had on Reyes' theory of liability. Reyes deposed Howell, then submitted affidavits from Dr. Bleyl and Anthony Voyles, a traffic engineer with experience in conducting traffic impact studies.

**¶16** After hearing renewed oral argument, the court found the Town had violated Rule 26.1 by failing to disclose the 2003 TIS.[9]

**¶17** We have jurisdiction over the Town's timely appeal. *See* Ariz. Rev. Stat. ("A.R.S.") § 12-2101(A)(5)(a).

## ANALYSIS

**¶18** The Town argues the superior court abused its discretion in granting Reyes' motion for new trial.

> *I. Applicable Law and Standard of Review*

**¶19** A municipality "is not bound to provide perfect intersections or streets, but only those which are 'reasonably safe.'" *Coburn v. City of Tucson*, 143 Ariz. 50, 54 (1984). At the same time, "motorists have a duty to drive with reasonable care," and "[w]hat is 'reasonably safe' takes into

---

[8] At oral argument before this court, counsel for the Town further explained, "A traffic impact study does not dictate signing or safety issues down the road, and it couldn't be used to support the Town's position that the roadway was reasonably safe at the time of the accident."

[9] In his motion for new trial, Reyes had stated he considered any "alleged failure to produce evidence under [Rule] 26.1" to be a "non-issue" because he was relying solely on the Town's alleged failure to comply with his public records request. Nonetheless, the superior court found a Rule 26.1 violation, and the record is unclear to what extent, if any, the court relied on the alleged failure to properly respond to Reyes' public records request as a basis for granting the motion for new trial.

consideration certain minimal expectations that travelers follow the usual rules of the road." *Id.* at 52, 54 (citations omitted).

**¶20** The superior court has discretion to grant a motion for new trial based on a party's misconduct. *Leavy v. Parsell*, 188 Ariz. 69, 72 (1997). In exercising that discretion, the court must decide whether the misconduct materially affected the aggrieved party's rights. *Id.* (citing *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 454 (1982)). "Reversal [of an order denying a new trial on grounds of misconduct] will be required only when it appears probable that the misconduct 'actually influenced the verdict.'" *Id.* (citing *Grant*, 133 Ariz. at 454 (quoting *Sanchez v. Stremel*, 95 Ariz. 392, 395 (1964))). This is a factual determination, and no presumption of prejudice or lack of prejudice should be applied. *Id.*

**¶21** We generally review the grant of a new trial more liberally than an order denying one, *State Farm Fire & Cas. Co. v. Brown*, 183 Ariz. 518, 521 (App. 1995), and absent an abuse of discretion, will not disturb the grant of a motion for new trial, *Henry ex rel. Estate of Wilson v. HealthPartners of S. Ariz.*, 203 Ariz. 393, 398, ¶ 16 (App. 2002). However, the trial court's discretion must be exercised according to reason and law. *Koepnick v. Sears Roebuck & Co.*, 158 Ariz. 322, 325 (App. 1988). Because a trial court abuses its discretion if it commits an error of law, we review *de novo* the superior court's rulings on questions of law presented in the motion for new trial. *Sandretto v. Payson Healthcare Mgmt., Inc.*, 234 Ariz. 351, 355, ¶ 8 (App. 2014). A trial court also abuses its discretion "when the record lacks substantial evidence to support the court's finding." *Varco, Inc. v. UNS Elec., Inc.*, 242 Ariz. 166, 170, ¶ 12 (App. 2017) (citing *Romer-Pollis v. Ada*, 223 Ariz. 300, 302-03, ¶ 12 (App. 2009)); *see also State v. Fischer*, 242 Ariz. 44, 51, ¶ 26 (2017) ("The appellate court's role is to oversee the granting of new trials and to ensure that the exercise of a trial court's broad discretion has a legal, rather than an arbitrary, basis." (citing *Estabrook v. J.C. Penney Co.*, 105 Ariz. 302, 305 (1970))).

## II. The Merits

**¶22** In granting Reyes' motion for new trial, the superior court first found the Town violated Rule 26.1, and then, relying on *Leavy*, concluded the Town's misconduct "materially affected" Reyes' rights. *See* 188 Ariz. at 72. Stating that it "decline[d] to act as an expert on traffic studies by trying to parse through the significance of the traffic numbers in the [2003 TIS]," the court instead relied on the post-trial affidavits by Reyes' experts, who opined that the 2003 TIS (1) might have given rise to new issues regarding road design, and (2) tended to undermine any argument

the Town might make that sound engineering judgment was applied to produce the subject roadway configuration. The court explained that it was

> persuaded by Dr. Bleyl and Mr. Voyles that the existence of the [2003 TIS] will likely open the door to a new liability theory—negligent design of the roadway that will be based on a "data driven analysis." This is significant because negligent design claims turn on engineering judgment. Thus, the theory is much broader than [Reyes'] Sign Theory.

### A.     The Public Records Request

**¶23**         On appeal, the parties continue to dispute whether the Town's alleged failure to fully comply with Reyes' public records request constituted a valid ground for a new trial. To some extent, these arguments conflate the Town's duties pursuant to the public records laws with the Town's duty of disclosure under Rule 26.1. Thus, as a preliminary matter, we address this issue and hold that, to the extent the superior court may have concluded the Town's allegedly incomplete response to a public records request made outside the Arizona Rules of Civil Procedure constituted a Rule 26.1 disclosure violation, such conclusion was error. This is especially true given that the 2003 TIS was not relevant to Reyes' pretrial liability theories or the Town's defenses disclosed and advanced during the litigation.

**¶24**         Arizona's "disclosure rules are designed to provide parties 'a reasonable opportunity to prepare for trial or settlement – nothing more, nothing less.'" *Zimmerman v. Shakman*, 204 Ariz. 231, 235, ¶ 13 (App. 2003) (quoting *Bryan v. Riddel*, 178 Ariz. 472, 477 (1994)). They are not meant to be used as a "weapon" for attacking another party's case, *see id.*, and courts must use a common-sense approach in applying the rules, *Rivers v. Solley*, 217 Ariz. 528, 531, ¶ 13 (App. 2008), while keeping in mind the specific facts of the case, *Zimmerman*, 204 Ariz. at 235, ¶ 14.

**¶25**         Rule 26.1, which governs the parties' obligations to make prompt disclosure of information, was adopted "to make the judicial system in Arizona more efficient." *Montgomery Ward & Co. v. Superior Court*, 176 Ariz. 619, 621 (App. 1993) (quoting Ariz. R. Civ. P. 26.1, ct. cmt.). "[The Rule 26.1] disclosure statement is the primary vehicle by which the parties are informed of their opponent's case. Thus, it should fairly expose the facts and issues to be litigated, as well as the witnesses and exhibits to be relied upon." *Bryan*, 178 Ariz. at 477.

¶26     Under Rule 34, a litigant may serve a request for the inspection and, if desired, copying of "discoverable documents" related to the litigation. Ariz. R. Civ. P. 34 (supp. note). The request "must describe with reasonable particularity each item or distinct category of items to be inspected," and the responding party must either allow inspection or state the grounds and reasons for objecting to the request. Ariz. R. Civ. P. 34(b)(2)(A), (3)(B). The Rule 34 process also affords efficient judicial supervision of compliance issues. *See also* Ariz. R. Civ. P. 37(a) (motion to compel discovery). Likewise, Rule 33, Ariz. R. Civ. P., governs the discovery of information through interrogatories. Thus, the Arizona Rules of Civil Procedure provide a process for parties to produce relevant information and a mechanism for court-supervised enforcement.

¶27     A public records request, on the other hand, is a method by which any member of the public may acquire documents outside of pending litigation and the rules of discovery; it is *not* a request for documents pursuant to Rule 34 or the Arizona Rules of Civil Procedure. *See generally Bolm v. Custodian of Records of the Tucson Police Dep't*, 193 Ariz. 35, 39 n.4, ¶ 11 (App. 1998). Accordingly, although the Town had a clear obligation to comply with the Public Records Law, *see id.* at 39-40, ¶ 11 (citing 1989 Ariz. Op. Atty. Gen. 41), and the Town may have failed to fully comply with that law when it did not produce the 2003 TIS, that obligation was separate and apart from the Town's disclosure obligations in the litigation as imposed by the Arizona Rules of Civil Procedure, and the procedure available to remedy non-compliance is markedly different.[10] Separate treatment of these obligations, along with separate enforcement mechanisms, makes sense, given that Rule 34 provides procedural safeguards, such as provisions for withholding and objection, that are not applicable to a public records request. *Compare* Ariz. R. Civ. P. 34(b)(3)(B)-(C), *with* A.R.S. § 39-121 ("Public records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours."); *cf. Bolm*, 193 Ariz. at 39 n.4, ¶ 11 ("Unlike Arizona's Public Records Law, some states' statutes expressly permit a public entity to

---

[10]     *See generally* A.R.S. § 39-121.02(A) ("Any person who has requested to examine or copy public records pursuant to this article, and who has been denied access to or the right to copy such records, may appeal the denial through a special action in the superior court, pursuant to the rules of procedure for special actions against the officer or public body."), (C) ("Any person who is wrongfully denied access to public records pursuant to this article has a cause of action against the officer or public body for any damages resulting from the denial.").

withhold records specifically prepared for use in pending litigation to which the public agency is a party.").

**¶28** Reyes' public records request for traffic studies was a request made outside the Arizona Rules of Civil Procedure; accordingly, any failure by the Town to comply with that request did not implicate those rules, or any remedial measures available under those rules.

### B.      Rule 26.1

**¶29** We now address whether, separate and distinct from the public records request, Rule 26.1 required the Town to produce the 2003 TIS.

**¶30** Under Rule 8, Ariz. R. Civ. P., "Arizona follows a notice pleading standard, the purpose of which is to 'give the opponent fair notice of the nature and basis of the claim and indicate generally the type of litigation involved.'" *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 6 (2008) (quoting *Mackey v. Spangler*, 81 Ariz. 113, 115 (1956)). This is a broad standard. As the litigation progresses, however, a party must timely disclose the factual basis of a party's claims or defenses and "the legal theory on which each" claim or defense is based. Ariz. R. Civ. P. 26.1(a)(1)-(2).

**¶31** The two subsections of Rule 26.1 that specify a party's obligation to disclose documents define the scope of that obligation in terms of the claims and defenses asserted in the litigation. Rule 26.1(a)(8) requires the disclosure of tangible evidence "that the disclosing party plans to use at trial." Here, the Town had no plans to use the 2003 TIS at trial. The Town's defense never relied on any pre-construction traffic impact studies, the 2003 TIS did not contain any meaningful analysis of the portion of Ocotillo Road east of the Greenfield Road intersection, and the Town's traffic engineering expert, Dr. Kwasniak, focused his analysis and opinions on conditions existing at the time of the accident, not conditions that existed ten years earlier.

**¶32** Rule 26.1(a)(9) is broader and requires disclosure of tangible evidence "that may be relevant to the subject matter of the action." What is "relevant" is case-dependent, and in this context (a claim against a government entity) is shaped by (1) the facts and legal theories fairly outlined by the claimant in the statutorily required notice of claim, *see* A.R.S. § 12-821.01, (2) the complaint, (3) the answer to the complaint, (4) the plaintiff's recitation of the facts and theories and identification of topics of anticipated witness testimony fairly identified in the plaintiff's disclosure

statements and discovery responses, (5) the defendant's recitation of the facts and defenses and identification of topics of anticipated witness testimony as fairly identified in the defendant's disclosure statements and discovery responses, (6) expert witness disclosure statements by both parties, (7) deposition testimony of disclosed trial experts, and (8) the pretrial statement(s). Beyond this, Rule 26.1 does not require a party to speculate about or anticipate theories of liability or defenses not affirmatively disclosed or reasonably inferable from such disclosures.

¶33       When the initial disclosure statements were exchanged, Reyes had not provided notice, pled, or otherwise disclosed any factual basis or legal theory against the Town related to the initial design, planning, or development of Ocotillo Road. Based on Reyes' disclosed theories, which focused only on lighting and signage along the road, and the Town's defenses, the Town had no reason under Rule 26.1 to search for and/or produce a more-than-decade-old traffic impact study made in connection with a potential developer's proposed subdivision plan of the area, or any reason to believe that such a traffic impact study might have anything to do with a single-vehicle, excessive speed, drunk-driving accident that occurred more than ten years later. Further, as previously noted, the 2003 TIS provided little new or meaningful information concerning the portion of Ocotillo Road at issue in this case. At best, to the very limited degree it contained marginally useful information, the traffic count data and estimates in the 2003 TIS were comparable to Dr. Kwasniak's data.

¶34       Although Reyes appeared to slightly revise his negligence theory regarding signage during the course of the litigation, in both the parties' Joint Pretrial Statement and Reyes' Amended Joint Pretrial Statement, his only theory of liability was that the Town "has comparative fault for its failure to follow the standard of care and state law requiring specific signage or barriers to warn of a canal that sits where Ocotillo [Road] ends." This theory had nothing to do with roadway design, planning, or development activities in response to a contemplated residential subdivision.

¶35       The joint pretrial statement must identify all "contested issues of fact and law that the parties agree are material or applicable." Ariz. R. Civ. P. 16(f)(2)(B). It also must include "a separate statement by each party of other issues of fact and law that the party believes are material." Ariz. R. Civ. P. 16(f)(2)(C). The joint pretrial statement supersedes the pleadings and "controls the subsequent course of the litigation." *Carlton v. Emhardt*, 138 Ariz. 353, 355 (App. 1983). Of course, the joint pretrial statement is subject to modification or limitation by previous disclosures and the

superior court. *See id.* The superior court recognized Reyes' negligence claim was limited to his signage theory of liability shortly before trial when, as previously noted, with regard to Reyes' suggestion that the Town might be negligent for failing to install fencing or barriers before the canal, the court granted the Town's motion *in limine* "excluding evidence of other negligence theories" and ruled that Reyes' "negligence theories shall be limited to those contained in [his] expert disclosures or depositions."

¶36 In this case, Reyes' entire pretrial legal theory was about signage, especially Type 4 object markers. Any alleged negligence in the design of the roadway due to traffic anticipated from a potential subdivision was never at issue, and the Town had no reason, based on Reyes' asserted theory of liability, to search for and disclose the 2003 TIS before trial. Simply stated, such a study was not "relevant to the subject matter of the action."

¶37 Accordingly, the Town did not violate either Rule 26.1(a)(8) or (a)(9) by failing to disclose the 2003 TIS. Because the superior court erred in finding the Town violated its disclosure obligations under Rule 26.1, its order granting a new trial on that ground must be set aside.

### C. Material "Misconduct" and Prejudice

¶38 Finally, even were we to agree the Town violated Rule 26.1, we would reverse the order granting a new trial because we disagree that the Town's failure to disclose the 2003 TIS materially affected Reyes' rights and prejudiced him under the standards set forth in *Leavy*. Reyes has not shown that anything in the 2003 TIS materially undermined the conclusions of the Town's expert witness on signage. As for speculation that the study might have been the basis for a new negligence theory based on roadway design, nothing precluded Reyes and his retained expert from developing and asserting a road design theory of liability before trial, and nothing precluded Reyes from timely obtaining an accident reconstruction analysis, a road design study, and qualified expert opinions to support such theory.[11]

---

[11] Before trial, Dr. Bleyl was not provided and never reviewed the lengthy Development File the Town had voluntarily and timely disclosed to Reyes. In addition to the review comment sheet from the Town's traffic engineer concerning the 2003 TIS, the Development File contained a 1999 traffic impact report, which also concerned the proposed Freeman Farms development, and it appears that, to the limited degree the 2003 TIS might have been relevant, it simply reinforced what was said in the 1999 traffic impact report.

The Town's failure to produce the 2003 TIS does not, on this record, support allowing Reyes to interject an untimely disclosed new theory of potential liability. *See Fischer*, 242 Ariz. at 51, ¶ 26. The superior court should not have granted a new trial on the basis that Reyes might have developed such a new theory of liability, and in doing so, the court abused its discretion. *See generally Jimenez v. Wal–Mart Stores, Inc.*, 206 Ariz. 424, 427, ¶¶ 8-9 (App. 2003).

## CONCLUSION

**¶39** The superior court's order granting a new trial is reversed. The Town is awarded its taxable costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21. We remand this case and direct the superior court to reinstate the jury verdict in favor of the Town.



AMY M. WOOD • Clerk of the Court
FILED: AA