262 P.3d 863

Tana RYAN, Personal Representative of the Estate of Patrick Ryan, individually, and for and on behalf of herself, Plaintiff/Appellant,

v.

SAN FRANCISCO PEAKS TRUCKING COMPANY, INC., an Arizona corporation; Gerald Robert Morgan and Jane Doe Morgan, husband and wife, Defendants/Appellees.

No. 1 CA–CV 10–0016.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 25, 2011.

44

Udall, Shumway & Lyons, PLC By H. Micheal Wright and Lincoln M. Wright, Mesa, Attorneys for Plaintiff/Appellant.

Dean R. Cox, LLC By Dean R. Cox, Prescott, Attorney for Defendants/Appellees.

## OPINION

BROWN, Judge.

¶1 Tana Ryan, individually and on behalf of the Estate of Patrick Ryan ("Tana"), appeals a judgment in favor of San Francisco Peaks Trucking Company, Inc. ("SFP") and its employee Gerald Robert Morgan on Tana's claims for negligence and wrongful death.[1] Tana asserts that the court erred by denying her motion for summary judgment regarding SFP's nonparty-at-fault allegations.[2] For the following reasons, we affirm.

## BACKGROUND

¶2 In April 2002, Tana and her husband, Patrick Ryan, were involved in a vehicle collision with Morgan, who was driving a semi-tractor-trailer owned by SFP. Patrick was driving a motorcycle; Tana was his passenger. Patrick and Tana were both injured in the collision, and Patrick later died from his injuries.

¶3 In April 2004, Tana sued SFP, alleging negligence and wrongful death. Tana's complaint also alleged claims for negligence and wrongful death against John and Emily Zboncak, who were also involved in the accident in a separate vehicle. A year later, Tana filed a separate lawsuit against certain medical facilities and professionals involved in Patrick's post-accident care, alleging claims for medical malpractice, negligence, abuse of a vulnerable adult, and wrongful death. The two cases were consolidated in the trial court.

---

1. Morgan died prior to trial from causes unrelated to the collision. His estate was never substituted as a defendant and the court entered judgment for both SFP and Morgan. Hereinafter, unless otherwise noted, we refer to SFP and Morgan collectively, and in the singular, as "SFP."

2. Pursuant to Arizona Rule of Civil Appellate Procedure 28(g), we address other issues raised on appeal by Tana in a separate memorandum decision filed herewith.

¶ 4 Tana served her initial disclosure statement in April 2006, explaining in substantial detail the factual and legal grounds supporting her claims against the entities and individuals who had provided medical care to Patrick following the accident.[3] Tana asserted that two of the medical facilities, St. Joseph's Hospital and Select Specialty Hospital, were negligent in failing, *inter alia*, to prepare a proper care plan, institute proper infection control, and conduct proper nursing assessments. Tana also included detailed explanations about alleged negligent handling and care of Patrick's feeding tube. Finally, Tana asserted that those who provided medical treatment to Patrick failed to exercise the degree of skill and care expected of a reasonable and prudent medical provider, and that as a result of such failures Patrick suffered abuse, neglect, malnutrition, dehydration, and premature death. The disclosure statement identified two expert witnesses, Bruce Ragsdale, M.D., and Suzanne Frederick, R.N., each of whom had prepared a preliminary expert opinion affidavit. Copies of the affidavits apparently were not provided with the disclosure statement, but the disclosure statement included essentially a verbatim summary of the affidavits.

¶ 5 In March 2007, Tana disclosed two more expert witnesses, Sara Tabby, M.D., and Michael Foley, M.D., and served their preliminary expert opinion affidavits along with the affidavits prepared by Ragsdale and Frederick. In general, the four experts opined that medical personnel acted negligently in failing to properly care for Patrick's feeding tube.

¶ 6 In September 2007, Tana reached settlement agreements with St. Joseph's and Select Specialty, and dismissed the remaining defendants with prejudice. Tana also served a supplemental disclosure statement indicating that she was withdrawing her medical experts as trial witnesses.

¶ 7 A short time later, SFP filed a notice identifying the dismissed defendants as non-parties at fault, alleging they were negligent for "the reasons set forth in Plaintiffs' pleadings, disclosure statements, discovery documents and expert opinions."[4] In support of its nonparty-at-fault allegations, SFP indicated that it intended to call Tana's experts to testify in person at trial and by way of deposition, and asserted it also would rely on Tana's pleadings, disclosure statements, and discovery documents as admissions.

¶ 8 In response, Tana argued SFP could not use her pleadings and disclosure statements as affirmative evidence to satisfy its burden of proving its nonparty-at-fault allegations. She further asserted that the expert witnesses she had designated to testify against the dismissed defendants were protected by the work product privilege and could not be compelled to testify for SFP. The trial court ruled that SFP could use Tana's "experts and evidence/admissions by a party," but clarified that SFP could rely on Tana's experts only if those experts' opinions had been disclosed through a "report, disclosure statement, responses to discovery or testimony." The court therefore ruled that SFP could not compel testimony or further evidence from Tana's experts, but could rely on any expert testimony previously disclosed.

¶ 9 In January 2008, Tana sought an order clarifying that SFP could not depose Frederick, Tana's nursing expert. The court ruled that SFP could use any expert opinion evidence that Tana disclosed before she withdrew Frederick as a testifying expert, but that SFP could not depose Frederick.

¶ 10 In October 2008, Tana moved for summary judgment, arguing that because SFP lacked a medical expert, it could not present a prima facie case of negligence against the nonparties. Tana also asserted that SFP could not rely on her expert disclosure statements and preliminary expert affidavits as prima facie evidence in support of SFP's nonparty-at-fault allegations. SFP moved to strike the motion on the grounds that it was simply a motion to reconsider the

---

3. Although signed by her attorney, none of the disclosure statements contained in this record were signed by Tana.

4. St. Joseph's and Select Specialty were the only dismissed medical defendants who remained nonparties at fault at trial. Hereinafter, we refer to St. Joseph's and Select Specialty as "the nonparties."

court's earlier ruling. The trial court granted the motion to strike, noting that it had previously addressed the issues raised in the motion. The court confirmed that SFP could use Tana's "experts and evidence/admissions" to support its nonparty-at-fault allegations, but could rely on Tana's expert opinion evidence only if that evidence had been disclosed through a disclosure statement, responses to discovery, or testimony. Additionally, the court found that SFP could use "[Tana's] experts and evidence/admissions by a party ... to satisfy a requirement that [SFP] has expert witnesses to support its defense." The court thus effectively ruled that SFP could rely on Tana's expert disclosure statements and preliminary expert affidavits as prima facie evidence of its nonparty-at-fault allegations.

¶ 11 At the final pretrial conference, over Tana's objection, the court admitted in evidence copies of Tana's complaint, disclosure statements, and preliminary expert opinion affidavits as admissions by a party-opponent. At trial, SFP cross-examined Tana regarding her prior allegations against the dismissed defendants, as contained in her complaint and preliminary expert affidavits. The jury was instructed on comparative fault, but returned a general verdict in favor of SFP. This timely appeal followed.

## DISCUSSION

### I. Admissibility of Disclosure Statements

 ¶ 12 Tana asserts that the trial court erred when it determined that her disclosure statements were admissible as admissions by a party-opponent pursuant to Arizona Rule of Evidence ("Rule") 801(d)(2).[5] "We review evidentiary rulings for an abuse of discretion and generally affirm a trial court's admission or exclusion of evidence absent a clear abuse or legal error and resulting prejudice." *John C. Lincoln Hosp. &*

Health Corp. v. Maricopa Cnty., 208 Ariz. 532, 543, ¶ 33, 96 P.3d 530, 541 (App.2004).

 ¶ 13 Rule 801(d)(2) states in pertinent part:

**(d) Statements which are not hearsay.** A statement is not hearsay if—

. . .

(2) *Admission by party-opponent.* The statement is offered against a party and is ... (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]

Ariz. R. Evid. 801(d)(2). One offering a statement in evidence under Rule 801(d)(2)(D) must show that the statement: "(1) was made by the opposing party's agent or servant, (2) was made during the existence of the relationship, and (3) concerned a matter within the scope of the agency or employment." *Shuck v. Texaco Ref. & Mktg., Inc.,* 178 Ariz. 295, 298, 872 P.2d 1247, 1250 (App. 1994). Such an admission is not hearsay, and may be offered as affirmative evidence of the truth of a matter. *See* Ariz. R. Evid. 801(d)(2); *see also Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors,* 184 Ariz. 419, 424–25, 909 P.2d 486, 491–92 (App.1995) (even if an admission by a party-opponent is offered for the truth of the matter, it is not hearsay); *State v. Miller,* 135 Ariz. 8, 15, 658 P.2d 808, 815 (App.1982) (admissions by a party-opponent are admissible for the truth of the matter).

¶ 14 In *Henry ex rel. Estate of Wilson v. HealthPartners of S. Ariz.,* 203 Ariz. 393, 55 P.3d 87 (App.2002), this court addressed whether allegations in a complaint were admissible pursuant to Rule 801(d)(2)(D). There, the plaintiff, decedent's estate,

5. Because the jury returned a verdict in favor of SFP, theoretically it did not reach the question of whether to apportion any fault to the nonparties. Thus, we could affirm based on the principle that jurors are presumed to follow their instructions. However, because of the substantial prejudice that could have resulted if the jury were allowed

to consider inadmissible evidence relating to the alleged nonparties at fault, we consider Tana's arguments on the merits. *Cf. Bruton v. United States,* 391 U.S. 123, 135, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (noting that the "practical and human limitations of the jury system cannot be ignored").

brought a medical malpractice action after medical personnel failed to appropriately diagnose decedent's breast cancer. *Id.* at 394–95, ¶¶ 1–4, 55 P.3d at 88–89. After the plaintiff settled with two of the three defendants, the remaining defendant, Tucson Medical Center ("TMC"), named the settling defendants as nonparties at fault. *Id.* at 394, 396–97, ¶¶ 5, 11, 55 P.3d at 88, 90–91. At trial, the court granted TMC's request to read to the jury the allegations in the complaint that a nonparty was at fault, finding that the plaintiff's complaint constituted an admission by a party-opponent. *Id.* at 395, ¶ 6, 55 P.3d at 89.

¶ 15 On appeal, this court concluded that the plaintiff's factual allegations in her complaint, including assertions that a nonparty had been negligent, were evidentiary admissions and therefore admissible under Rule 801(d)(2)(D). *Id.* at 396, ¶ 9, 55 P.3d at 90. We reasoned that the complaint was written by the plaintiff's attorney as her agent, and thus the allegations contained therein were admissible even though plaintiff may not have had "personal knowledge of the matter asserted in the statement." *Id.* at 395–96, ¶¶ 7, 9, 55 P.3d at 89–90 (quotations and citation omitted). However, we noted that these admissions, because they were "evidentiary" and not "judicial" admissions,[6] were not "in and of themselves, conclusive of fault." *Id.* at 396, ¶ 9, 55 P.3d at 90. We concluded that the admissions were properly admitted for the purpose of discrediting plaintiff's contention that the nonparty's negligence was minimal. *Id.* at ¶¶ 9–10.

¶ 16 Here, Tana's disclosure statements, like the complaint in *Henry*, were prepared

by Tana's attorney as her agent, and thus fall under the purview of the rule. These documents were prepared during the existence of the attorney/client relationship and concerned matters within the scope of the attorney's agency. Accordingly, the disclosure statements are admissible as evidentiary admissions pursuant to Rule 801(d)(2)(D).[7] But, as in *Henry*, the evidence was not conclusive of fault, and thus Tana was properly given the opportunity to explain or deny the information contained in her disclosure statements, allowing the jury to weigh the evidence and determine the significance of the statements. *See Reed v. Hinderland*, 135 Ariz. 213, 216, 660 P.2d 464, 467 (1983) (finding that "evidentiary" admissions, in contrast to "judicial" admissions, are *"not in any sense final or conclusive"*; rather, the opponent of the admission must be given the opportunity to explain or deny the statement so that the trier of fact may determine the significance of the statement) (citation omitted).[8]

¶ 17 Our conclusion that a disclosure statement may be admissible as an admission by a party-opponent helps ensure that parties are held accountable for their pleadings and disclosure statements, and prevents a party from reaping the benefits of asserting inconsistent arguments—such as a plaintiff who first alleges negligence against a nonparty and obtains the benefits of settlement, but subsequently minimizes the fault of the settling nonparty in a trial against a remaining defendant. *See Henry*, 203 Ariz. at 396, ¶ 11, 55 P.3d at 90. Accordingly, the trial court did not err when it determined that the

---

**6.** A judicial admission, or "confessory pleading," is an express waiver filed in court prior to trial which is presumed to be true and cannot be disproven. *See Clark Equip. Co. v. Ariz. Prop. & Cas. Ins. Guar. Fund*, 189 Ariz. 433, 439–40, 943 P.2d 793, 799–801 (App.1997).

**7.** A party may timely amend his or her disclosure statement. *See* Ariz. R. Civ. P. 26.1(b)(2). The record does not show that Tana did so in this case.

**8.** We note that even if the disclosure statements were not admissible as admissions by a party-opponent, SFP could use them to impeach Tana's assertion that SFP was primarily liable

for causing her husband's injuries and ultimately, his death. *See Henry*, 203 Ariz. at 396, ¶¶ 10–11, 55 P.3d at 90; *see also Hernandez v. State*, 203 Ariz. 196, 199–200, ¶ 14, 52 P.3d 765, 768–69 (2002) ("Excluding evidence offered solely to impeach a party's credibility ... fails to hold parties accountable for setting forth one version of the facts to obtain a settlement and describing another version at trial."). Moreover, the disclosure statements themselves were admissible as exhibits because Tana was given an opportunity to explain the statements. *See* Ariz. R. Evid. 613(b) ("Extrinsic evidence of a prior inconsistent statement by a witness is ... admissible ... [if] the witness is afforded an opportunity to explain or deny" the statement.).

disclosure statements were admissible as admissions by a party-opponent.

¶ 18 Although Tana challenges the admission of the disclosure statements, she does not contest the trial court's ruling that the *affidavits* were admissions by a party-opponent pursuant to Rule 801(d)(2)(D). We therefore assume that the affidavits were properly admitted. *See Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167, 920 P.2d 41, 47 (App.1996) ("By failing to raise the issue ... the [appellants] have waived it.").

## II. Expert Witness Testimony

¶ 19 Tana next argues the trial court erred when it denied her motion for summary judgment because SFP failed to disclose its own medical expert witness to prove the fault of the nonparties. As such, Tana asserts that the court should have dismissed SFP's nonparty-at-fault claim because SFP was precluded from presenting in-person testimony at trial. She further asserts that the trial court erred when it allowed SFP to satisfy its burden by offering Tana's own disclosure statements and expert affidavits.

¶ 20 Generally, the denial of a motion for summary judgment is not reviewable on appeal when a final judgment has been entered after a trial on the merits.[9] *John C. Lincoln Hosp.*, 208 Ariz. at 539, ¶ 19, 96 P.3d at 537. Therefore, in cases that have proceeded to trial, a party that wishes to preserve a summary judgment issue for appeal must reassert it during or after trial in a Rule 50 motion for judgment as a matter of law or other motion. *Id.* However, where the denial of a motion for summary judgment is based on a purely legal issue, that rule does not apply. *Id.* A purely legal issue is "one that does not require the determination of any predicate facts, namely, 'the facts are not merely undisputed but immaterial.'" *Id.* at 539 n. 5, ¶ 19, 96 P.3d at 537 n. 5 (citations omitted).

¶ 21 In her motion, Tana asserted that SFP could not present a prima facie case of negligence against the nonparties without in-person expert testimony at trial. In denying the motion, the trial court confirmed, consistent with its prior ruling, that Tana's disclosures and affidavits were admissible against her. However, the court also expanded its prior ruling by stating that SFP could use the disclosures and affidavits to satisfy its burden to prove the nonparties' negligence. Tana's motion posed a purely legal issue—whether SFP was entitled to rely solely on Tana's disclosure statements and experts' affidavits to prove that the nonparties were at fault. Thus, notwithstanding Tana's failure to reassert this issue during or after trial, we review de novo the trial court's denial of her motion. *See Strojnik v. Gen. Ins. Co. of Am.*, 201 Ariz. 430, 433, ¶ 11, 36 P.3d 1200, 1203 (App.2001).

¶ 22 Because an allegation of comparative fault relating to nonparties is an affirmative defense, the defendant must prove the nonparty is actually at fault. *See A Tumbling–T Ranches v. Flood Control Dist. of Maricopa Cnty.*, 222 Ariz. 515, 540, ¶ 83, 217 P.3d 1220, 1245 (App.2009). As such, the defendant must offer evidence that the nonparty owed a duty to the plaintiff, that the duty was breached, and that the breach caused injury to the plaintiff. *Id.* (citing A.R.S. § 12–2506(F)(2)); *see also Ocotillo W. Joint Venture v. Superior Court*, 173 Ariz. 486, 488, 844 P.2d 653, 655 (App.1992). "A trial court may instruct a jury on assigning fault to a non party only if evidence offered at trial is adequate to support the jury finding that the non[ ]party was negligent." *Tumbling–T*, 222 Ariz. at 540, ¶ 83, 217 P.3d at 1245; *see also Czarnecki v. Volkswagen of Am.*, 172 Ariz. 408, 411, 837 P.2d 1143, 1146 (App.1992) (a trial court should give a requested jury instruction if there is "any evidence tending to establish the theory posed in the instruction," even if contradictory facts are presented).

¶ 23 In a medical malpractice case, the plaintiff must prove negligence by

9. The trial court struck Tana's motion for summary judgment on the grounds that it had already been decided in a prior ruling. However, because the trial court's ruling expanded the previous ruling and addressed a purely legal issue, we treat it as a denial of the motion for summary judgment. *See infra* ¶ 21.

presenting evidence that the healthcare provider(s) fell below the standard of care and that these deviations from the standard of care proximately caused the claimed injury. A.R.S. § 12–563 (2003); *Seisinger v. Siebel,* 220 Ariz. 85, 94, ¶ 32, 203 P.3d 483, 492 (2009). In the typical case, the standard of care must be established by "expert medical testimony." *Seisinger,* 220 Ariz. at 94, ¶ 33, 203 P.3d at 492; *Phillips v. Stillwell,* 55 Ariz. 147, 149, 99 P.2d 104, 105 (1940) ("Evidence as to what constitutes the proper degree of skill ... can only be given by expert witnesses[.]"). Similarly, unless a causal relationship is readily apparent to the trier of fact, expert medical testimony is normally required to establish proximate cause. *Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.,* 224 Ariz. 414, 419, ¶ 16, 231 P.3d 946, 951 (App.2010).

■ ¶ 24 These requirements apply equally to a defendant asserting that a nonparty healthcare provider negligently caused or contributed to a plaintiff's injury. *See* A.R.S. § 12–2603 (Supp.2010) (requiring the party designating a nonparty at fault to file a preliminary expert opinion affidavit if expert opinion testimony is necessary to prove the health care professional's standard of care or liability for the claim); *Gorney v. Meaney,* 214 Ariz. 226, 230, ¶ 11, 150 P.3d 799, 803 (App.2007) (defendant that asserts nonparties at fault in medical malpractice case must complete a preliminary expert opinion affidavit "[f]or all medical malpractice claims that *will require expert opinion testimony at trial*") (emphasis added).

¶ 25 Here, SFP relied on Tana's disclosure statements and expert affidavits, which stated in detail the circumstances surrounding Patrick's medical care following the accident. Tana's disclosure statements and her experts' affidavits asserted that the nonparties had negligently replaced Patrick's feeding tube, causing an infection and eventually death. Tana alleged further that nurses failed to adequately clean Patrick's wound, resulting in infected pressure sores. These allegations did not lend themselves to a caus-

al relationship that would have been "readily apparent to the trier of fact." *See Salica,* 224 Ariz. at 419, ¶ 16, 231 P.3d at 951. Thus, to the extent that SFP intended to adopt Tana's allegations, it was required to present expert medical testimony on both the standard of care and causation.

■ ¶ 26 The disclosure statements, by themselves, were insufficient to meet SFP's burden of proof because they did not include opinions of medical experts. Thus, without more, the disclosure statements were insufficient to meet SFP's burden to prove medical negligence on behalf of the nonparties.

¶ 27 SFP also relied, however, on preliminary expert affidavits that Tana filed during the litigation pursuant to A.R.S. § 12–2603(B), which mandates that such affidavits include:

1. The expert's qualifications to express an opinion on the health care professional's standard of care or liability for the claim.
2. The factual basis for each claim against a health care professional.
3. The health care professional's acts, errors or omissions that the expert considers to be a violation of the applicable standard of care resulting in liability.
4. The manner in which the health care professional's acts, errors or omissions caused or contributed to the damages or other relief sought by the claimant.

As previously explained, the expert affidavits were admitted at trial as admissions by a party-opponent pursuant to Rule 801(d)(2)(D) and Tana does not challenge their admission on appeal.[10] We therefore turn to whether such affidavits were sufficient to permit the jury to decide the fault of the nonparties. The pivotal factor in reaching this determination turns on the meaning of "expert testimony."

¶ 28 As noted, Arizona case law requires that negligence in a medical malpractice case be established by "expert testimony" or "expert witnesses." *See Seisinger,* 220 Ariz. at 94, ¶ 33, 203 P.3d at 492; *Phillips v. Stillwell,* 55 Ariz. 147, 149, 99 P.2d 104, 105 (1940).

---

10. At least one jurisdiction has addressed the issue of whether expert opinion affidavits are admissible as admissions by a party-opponent.

*See Barnett v. Hidalgo,* 478 Mich. 151, 732 N.W.2d 472, 478 (2007) (deciding that the affidavits involved there were admissible).

Because Arizona cases discussing this principle do not define these terms, however, we may turn to legal dictionaries for guidance. *See Cannon v. Hirsch Law Office, P.C.,* 222 Ariz. 171, 177, ¶ 19, 213 P.3d 320, 326 (App. 2009) (relying on Black's Law Dictionary, reasoning, "In determining the ordinary meaning of a word [set forth in Arizona case law], we may refer to an established and widely used dictionary.") (quoting *State v. Mahaney,* 193 Ariz. 566, 568, ¶ 12, 975 P.2d 156, 158 (App.1999)).

■■■ ¶ 29 According to Black's Law Dictionary, "witness" is defined as "One who gives testimony under oath or affirmation (1) in person, (2) by oral or written deposition, or (3) by affidavit." Black's Law Dictionary 1633 (8th ed.1999). Similarly, "testimony" is defined as "Evidence that a competent witness under oath or affirmation gives at a trial or in an affidavit or deposition." *Id.* at 1514; *see also Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (defining "testimony," in the context of the Confrontation Clause, as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact") (quoting 2 N. Webster, *An American Dictionary of the English Language* (1828)).

■■■ ¶ 30 Consistent with these definitions, we conclude that "testimony" for these purposes may include in-person testimony given at trial, a deposition, or a written affidavit or declaration. We therefore hold that a defendant may rely on a plaintiff's preliminary expert opinion affidavit to establish prima facie proof of fault by a nonparty, provided that the affidavit is admissible under the rules of evidence and satisfies the elements of a medical malpractice claim.[11] Although a party with the burden of proof in a medical malpractice case typically will present live testimony, Arizona law does not necessarily preclude use of an admissible expert opinion affidavit as substantive evidence. Tana has

cited no authority that requires presentation of in-person expert witness testimony, and we are aware of none. Accordingly, the trial court did not err when it denied Tana's motion for summary judgment on the basis that SFP had failed to identify an expert witness that it intended to call to testify in-person at trial to prove the nonparties' negligence.

¶ 31 Tana asserts nonetheless that the affidavits cannot be used as affirmative proof of fault because the purpose of a preliminary affidavit is to "show that a medical malpractice claim has merit, not to provide evidence to a jury." *See* A.R.S. § 12–2603. We agree that the purpose of the affidavit is to curb frivolous medical malpractice suits, *see Gorney,* 214 Ariz. at 229, 150 P.3d at 802; however, nothing in A.R.S. § 12–2603 indicates that the legislature intended to protect plaintiffs from challenges by defendants based on positions taken in the affidavit that conflict with positions plaintiffs may pursue later in the litigation.

¶ 32 Although Tana was required by statute to submit the preliminary affidavits before engaging in discovery, we do not believe this means she is not accountable for the substance of the statements set forth in the affidavits. Moreover, as we have noted, nothing prevented Tana from amending her affidavits or disclosing additional information advising SFP that her expert affidavits were based on limited facts. *See* A.R.S. § 12–2603(G) ("A claimant or party designating a nonparty at fault may supplement a claim or preliminary expert opinion affidavit with additional claims, evidence or expert opinions that are timely disclosed under the Arizona rules of civil procedure or pursuant to court order."); Ariz. R. Civ. P. 26.1(b)(2) (describing continuing duty of disclosure and that "additional or amended disclosures" are required "whenever new or different information is revealed").

---

11. Although two of the four affidavits were not notarized and were not subscribed under penalty of perjury pursuant to Arizona Rule of Civil Procedure 80(i), Tana did not assert at trial that these affidavits were inadmissible as "testimony" on this basis. She also did not object to the affiants' qualifications to testify to the standard of care pursuant to *Seisinger,* 220 Ariz. at 91,

¶ 18, 203 P.3d at 486. Nor did she assert that the affidavits failed to adequately prove negligence on behalf of the nonparties or that the jury should not have been instructed as to nonparties at fault due to lack of sufficiency of the evidence. Additionally, she has not raised any of these arguments on appeal.

¶ 33 Tana relies on A.R.S. § 12–2603(G) in support of her argument that even if preliminary expert opinion affidavits can be offered at trial, they must be used strictly for impeachment, not proof of a prima facie claim of negligence. The statute she relies on provides as follows: "A preliminary expert opinion affidavit may be used for impeachment only upon a finding of the court that the facts upon which the affidavit were based have not substantially changed and that the facts were known to the expert at the time the affidavit was prepared." A.R.S. § 12–2603(G). Nothing in this language, however, reflects any legislative intent to preclude use of such an affidavit as substantive evidence. The statute focuses only on the circumstances under which a preliminary expert opinion affidavit may be used for impeachment. Thus, we reject Tana's suggestion that the legislature intended to allow the affidavit to be used only for impeachment of a witness.[12]

¶ 34 Tana also asserts that allowing a defendant to use a plaintiff's preliminary expert witness affidavit to prove liability of a nonparty would chill settlements. We disagree; our holding furthers Arizona's system of comparative fault, which seeks to hold a tortfeasor liable only to the extent of his or her fault. *State Farm Ins. Cos. v. Premier Manuf. Sys., Inc.*, 213 Ariz. 419, 423, ¶¶ 12–13, 142 P.3d 1232, 1236 (App.2006); *Church v. Rawson Drug & Sundry Co.*, 173 Ariz. 342, 350, 842 P.2d 1355, 1363 (App.1992) ("The main principle of comparative negligence is that it is fair to divide damages between the parties who are at fault based on each party's degree of fault."); *see also* A.R.S. § 12–2506(A) (2003) ("Each defendant is liable only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault[.]").

¶ 35 Moreover, permitting use of the affidavits as evidence of fault promotes honest and thorough disclosure of the facts and legal theories supporting a party's claim. *See Henry*, 203 Ariz. at 396–97, ¶ 11, 55 P.3d at 90–91 (a plaintiff should not be allowed to "have her proverbial cake and eat it too" by alleging negligence against a nonparty but later minimizing the nonparty's fault in a trial against the only remaining defendant). If a plaintiff proffers an expert who avers that a particular medical provider has committed malpractice, the plaintiff cannot entirely escape that position by settling with the provider prior to proceeding to trial against other defendants.

¶ 36 Finally, Tana asserts that SFP's counsel improperly cross-examined her with the affidavits in violation of Rule 602. More specifically, she asserts that she could not provide proper foundation for admission of the affidavits because "she had no knowledge or expertise about medical or nursing matters."

¶ 37 After the trial court ruled that the affidavits were admissible as admissions by a party-opponent, they were admitted into evidence. On cross-examination, Tana confirmed that she had hired the experts who prepared the affidavits and that she had submitted the affidavits in support of her contention that the nonparties were negligent. SFP then proceeded to read portions of the affidavits to Tana. Tana remembered the contents of some affidavits but not others.

¶ 38 "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Ariz. R. Evid. 602. During cross-examination, Tana testified that a number of experts were hired

---

12. Tana also argues that the admission of the affidavits deprived her of the opportunity for cross-examination because she was unable to question the experts who prepared the affidavits and SFP presented no in-person witness testimony. However, in support of her argument, Tana cites only criminal cases addressing the Confrontation Clause. Although the United States and Arizona Constitutions guarantee criminal defendants the right to confront their accusers, there is no corresponding civil right in this context.

*See Matter of Appeal in Maricopa Cnty. Juv. Act. No. JS–7499,* 163 Ariz. 153, 157, 786 P.2d 1004, 1008 (App.1989) (The right to confront an accuser under the state and federal constitutions "belongs solely to the accused in a criminal prosecution."); *cf. In re MH–2008–000867,* 225 Ariz. 178, 236 P.3d 405 (2010) (finding that criminal cases addressing the Confrontation Clause were inapplicable to mental health commitment proceedings because such proceedings are civil).

on her behalf and completed affidavits to further her claims against various medical providers. Therefore, although Tana did not possess medical expertise or knowledge about nursing matters, she had personal knowledge that experts were hired on her behalf, as well as knowledge of the general contentions set forth in the affidavits. To the extent Tana objects to SFP reading portions of the affidavits aloud during its examination of her, these statements were within the scope of cross-examination. *See Henry*, 203 Ariz. at 396, ¶ 11, 55 P.3d at 90 (defendant could cross-examine plaintiff with her complaint, previously admitted as an admission by a party-opponent, to impeach plaintiff's argument that the nonparties were only minimally negligent in a medical malpractice case); *see also Backus v. State*, 220 Ariz. 101, 107, ¶ 27, 203 P.3d 499, 505 (2009) (plaintiff's notice of claim may be admissible for impeachment if plaintiff later makes inconsistent statements).

 ¶ 39 Even assuming that SFP's cross-examination of Tana was improper, Tana cannot show prejudice because the affidavits had already been admitted as an exhibit and therefore were available for the jury to review. As such, it was harmless error. *See* Ariz. Const. art. 6, § 27 ("No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done."); Ariz. R. Civ. P. 61 (no error in either the admission or exclusion of evidence is ground for disturbing a judgment unless refusal to take such action appears inconsistent with substantial justice); *Hemet Dodge v. Gryder*, 23 Ariz.App. 523, 527, 534 P.2d 454, 458 (1975) (harmless error in a civil case is not cause for reversal).[13]

¶ 40 In sum, we conclude that after the trial court admitted Tana's expert affidavits as admissions of a party-opponent, SFP could rely on those affidavits to establish a prima facie case of negligence against the nonparties. Accordingly, the trial court did not err when it denied Tana's motion for summary judgment on the basis that SFP lacked a medical expert to testify in person at trial.

## CONCLUSION

¶ 41 For the foregoing reasons, and those set forth in our memorandum decision filed herewith, we affirm the judgment of the trial court.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge and JOHN C. GEMMILL, Judge.

---

**13.** Tana also argues that SFP's counsel improperly cross-examined her regarding the affidavits in violation of Rule 701 because she had no medical knowledge or expertise. However, Rule 701 addresses the admissibility of witness opinions or inferences. Ariz. R. Evid. 701. Because Tana did not state any opinions or inferences regarding the affidavits, that rule is inapplicable.