NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

REBEKAH ANN KORAK, et al., *Plaintiffs/Appellants*,

*v.*

STEPHEN HU, et al., *Defendants/Appellees*.

No. 1 CA-CV 19-0371

FILED 6-2-2020

Appeal from the Superior Court in Maricopa County
No. CV2015-090391
The Honorable Andrew J. Russell, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Keith R. Lalliss Attorney at Law, Mesa
By Keith R. Lalliss
*Counsel for Plaintiffs/Appellants*

Holden & Armer, P.C., Phoenix
By Carolyn Armer Holden, Michael J. Ryan, Nathan S. Ryan
*Counsel for Defendant/Appellee Khan*

Jones, Skelton & Hochuli, P.L.C., Phoenix
By Eileen Dennis GilBride
*Co-Counsel for Defendant/Appellee Hu*

Kent & Wittekind, P.C., Phoenix
By Peter M. Wittekind, Cynthia Y. Patane
*Co-Counsel for Defendant/Appellee Hu*

---

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Kenton D. Jones joined.

---

**W I L L I A M S**, Judge:

**¶1**        Rebecca Ann Korak ("Korak") appeals the superior court's order granting summary judgment in favor of Dr. Sarah Khan ("Khan") and Dr. Stephen Hu ("Hu") on Korak's claim of medical malpractice. For the following reasons, we affirm the court's order.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        In February 2013, Korak spent four days in the Arizona Regional Medical Center undergoing and recovering from a procedure to remove her gallbladder. Three days after being discharged, Korak was readmitted for complications from the procedure and subsequently transferred to Mountain Vista Medical Center ("Mountain Vista"). While at Mountain Vista, Korak underwent a CT scan on February 9th. Radiologist Khan read the CT scan, but failed to identify an abnormality, known as a pseudoaneurysm, that developed during the procedure days prior. On February 15th, another CT scan was performed. Radiologist Hu read this scan, but like Khan, failed to identify the pseudoaneurysm located on Korak's splenic artery, which had increased in size from February 9th.

**¶3**        On February 19th, Korak was discharged from Mountain Vista. The next day, because of continued complications, Korak returned to Mountain Vista where she underwent another CT scan. Radiologist Colvin ("Colvin") read the scan and identified the pseudoaneurysm for the first time. Colvin also reviewed the CT scans from February 9th and 15th, and, after observing the abnormality in both previous scans, noted that the pseudoaneurysm was increasing in size. The results were relayed to the attending physician, who discharged Korak the same day after deciding corrective action was not needed.[1] The next day, the pseudoaneurysm

---

[1] There is some discrepancy in the record, and between the parties, whether it was Dr. Raul Lopez or Dr. Ronald Genova who discharged Korak on February 20th. The discrepancy, however, is immaterial to the appeal.

ruptured. Korak was admitted to Banner Desert Medical Center, where she underwent surgery to remove her spleen.

¶4            Khan and Hu each moved for summary judgment, which the superior court granted. The court denied Korak's motion for a new trial, and Korak timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶5            Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). On appeal, we review a grant of summary judgment *de novo. Dreamland Villa Cmty. Club, Inc. v. Raimey*, 224 Ariz. 42, 46, ¶ 16 (App. 2010). "[W]e view the facts and reasonable inferences in the light most favorable to the non-prevailing party," *Rasor v. Nw. Hosp., LLC*, 243 Ariz. 160, 163, ¶ 11 (2017), but "will affirm a grant of summary judgment if the trial court was correct for any reason," *Dreamland*, 224 Ariz. at 46, ¶ 16.

¶6            In a medical malpractice action, a plaintiff must prove both that "[t]he health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances" and that "[s]uch failure was a proximate cause of the injury." A.R.S. § 12-563; *see also Ryan v. San Francisco Peaks Trucking Co., Inc.*, 228 Ariz. 42, 48-49, ¶ 23 (App. 2011).

¶7            Typically, the standard of care "must be established by expert medical testimony." *Seisinger v. Siebel*, 220 Ariz. 85, 94, ¶ 33 (2009); *Ryan*, 228 Ariz. at 49, ¶ 23; *see also Phillips v. Stillwell*, 55 Ariz. 147, 149 (1940) ("Evidence as to what constitutes the proper degree of skill . . . can only be given by expert witnesses . . . ."). "Similarly, unless a causal relationship is readily apparent to the trier of fact, expert medical testimony is normally required to establish proximate cause." *Ryan*, 228 Ariz. at 49, ¶ 23; *see also Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.*, 224 Ariz. 414, 419, ¶ 16 (App. 2010). The showing of a proximate causal connection requires the plaintiff's expert "to testify as to *probable* causes of the plaintiff's injury." *Benkendorf v. Advanced Cardiac Specialists Chartered*, 228 Ariz. 528, 530, ¶ 8 (App. 2012).

I.      *Standard of Care*

**¶8**          Korak's expert witness, radiologist Dr. Richard Van Allan ("Van Allan"), provided the compulsory preliminary expert affidavit. *See* A.R.S. § 12-2603(B). As to the relevant standard of care, Van Allan opined:

> 9. I have been retained by . . . Korak to review records of treatment of [Korak] during the month of February, 2013, and to give an opinion as to whether or not the treatment [Korak] received met the standard of care pertaining to board-certified radiologists. The specific issue was whether or not doctors practicing in radiology should have noted a pseudoaneurysm on the splenic artery after a . . . procedure was performed [in February 2013] . . . .
>
> 10. Among those records, I reviewed films of diagnostic procedures performed on [Korak] on February 9, 2013 and February 15, 2013. On the films of both of those dates, I noted that the pseudoaneurysm was visible. The film taken on February 9, 2013, reviewed by Sarah Khan, MD., one week after the surgery, shows the splenic artery deformity . . . . The film of February 15, 2013, reviewed by Stephen Hu, M.D. shows the deformity . . . .
>
> 11. The pseudoaneurysm being visible on the films of both February 9, and February 15, 2013, should have been noted and reported by doctors Khan and Hu. *Their failure to do so is beneath the standard of care required of radiologists.*

(emphasis added).

**¶9**          Based upon the record before us, Korak's preliminary expert affidavit was sufficient to withstand a motion for summary judgment as it relates to standard of care.

II.          *Proximate Cause*

**¶10**          As noted, *supra* ¶¶ 6-7, standard of care testimony is only half of the equation. To survive summary judgment, an expert witness must opine that the failed standard of care was the proximate cause of the injury sustained. *See* A.R.S. § 12-563; *Benkendorf*, 228 Ariz. at 530, ¶ 8.

¶11        Korak argues Van Allan was qualified to provide causation testimony and that he adequately addressed the same in his affidavit. Van Allan opined:

> 12. The purpose of the diagnostic procedures conducted on February 9, 2013, and February 15, 2013, was to advise treating physicians of any condition present with the patient that would reasonably require a procedure to remedy, if possible, the condition. The failure of Doctors Khan and Hu to note and report the presence of damage to an artery prevented the treating doctors from taking action to repair the damage to the artery until the pseudoaneurysm was discovered, after it began to bleed, on February 20, 2013.

¶12        The record does not support Korak's argument. Van Allan's affidavit provides no expert opinion that treating doctors exercising standard of care treatment *probably would have* "tak[en] action" differently than what took place here had Khan and Hu "not[ed] and report[ed] the presence of damage to an artery." *See Kreisman v. Thomas*, 12 Ariz. App. 215, 218 (1970) ("Such causation must be shown to be Probable and not merely Possible, and generally expert medical testimony that a subsequent illness or disease 'could' or 'may' have been the cause of the injury is insufficient.").

¶13        Further, even if, *arguendo*, Van Allan, a radiologist, was qualified to provide standard of care testimony for actions a surgeon or other attending physician likely *would have* taken[2], there remains another impediment to Korak's position. In reviewing the limited transcript from Van Allan's deposition testimony included within the record[3], Van Allan makes clear he was unable to confirm Khan and Hu's standard of care deficiency proximately caused Korak's injuries:

---

[2] The testifying expert witness must "specialize 'in the same specialty or claimed specialty' as the treating physician." *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 384, ¶ 14 (2013) (quoting A.R.S. § 12-2604(A)); *see also Rasor*, 243 Ariz. at 165-66, ¶ 27.

[3] Only two pages of the transcript from Van Allan's deposition testimony are included in the record. Korak had a duty to provide all relevant transcripts to support her appeal. *See* ARCAP 11(c)(1)(B). In the absence of a transcript, we presume the missing record supports the superior court's rulings. *Kohler v. Kohler*, 211 Ariz. 106, 108, ¶ 8 n.1 (App. 2005).

[Defense Counsel]: Are you going to be offering -- I don't see in your affidavit. Maybe I missed it. Are you going to be offering causation opinions in this case?

[Van Allan]: No.

. . . .

[Defense Counsel]: . . . [I]s there any way to know whether or not [the attending physicians] would have done anything differently, more aggressively to address the splenic artery pseudoaneurysm if they had known about it five days earlier when they didn't do anything about it on February 20th, or would that just be speculation?

[Van Allan]: I don't know the answer to that question.

**¶14**        Korak contends Van Allan's affidavit sufficiently addressed causation. We disagree. But even if it had, and Van Allan was qualified to give an opinion, the deposition testimony would have discredited the affidavit. When a witness's deposition testimony contradicts his prior affidavit, the deposition testimony is generally deemed to be more trustworthy. *See Ariz. Real Estate Dep't v. Ariz. Land Title & Tr. Co.*, 14 Ariz. App. 509, 511 (1971) (reasoning that "[b]ecause the affidavit lacks the confrontation aspect of the deposition and is a one-sided proposition, we believe that when an affidavit and deposition by the same person contradict each other, a deposition taken when the deponent is subject to cross-examination by the adverse party, normally should be held to be the more trustworthy of the two"). Because Korak has failed to establish proximate causation through expert opinion, the superior court did not err in granting summary judgment for Defendants Khan and Hu.

## CONCLUSION

**¶15**        For the foregoing reasons, we affirm the superior court's decision.

