NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LISA CURTIS, *Plaintiff/Appellant,*

*v.*

BANNER HEALTH, et al., *Defendants/Appellees.*

No. 1 CA-CV 19-0621
FILED 10-20-2020

Appeal from the Superior Court in Maricopa County
No. CV2017-055564
The Honorable Cynthia J. Bailey, Judge (Retired)

**AFFIRMED**

COUNSEL

Sternfels & White, PLLC, Fountain Hills
By Christopher J. Enos
*Counsel for Plaintiff/Appellant*

Jennings, Strouss & Salmon, P.L.C., Phoenix
By John J. Egbert, Jay A. Fradkin
*Counsel for Defendants/Appellees Banner Health*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge David D. Weinzweig joined.

---

**W I L L I A M S**, Judge:

¶1    Lisa Curtis ("Curtis") appeals the superior court's denial of her Rule 56(d) motion and grant of summary judgment for Banner Health ("Banner") on her claims of medical negligence. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2    On September 15, 2015, Curtis went to the emergency room at Banner Gateway Medical Center (the "hospital") seeking treatment for nausea, vomiting, diarrhea and body aches. Dr. Olin Vance examined Curtis and, among other things, ordered two blood cultures to determine if Curtis had a bacterial infection in her blood. The results of the blood cultures were still unknown when Dr. Vance discharged Curtis from the hospital that same day. Dr. Vance instructed Curtis to follow up with her primary care physician within three to four days, and to return to the hospital for any new or worsening symptoms.

¶3    Just hours after her discharge, the initial results of Curtis' blood cultures showed gram positive cocci. The lab informed the hospital's emergency room charge nurse of the results, but Curtis was not informed. As relevant here, Banner's hospital policy requires, in part, that staff notify the treating physician of a patient's critical results (Curtis' blood culture test results) "as soon as possible," and consider relaying results up the chain of command if the treating physician cannot be contacted "within 60 minutes of [staff] receiving the [results]."

¶4    Two days later, on September 17, the lab results confirmed staphylococcus aureus (a staph infection) and Dr. Casey Crandall, a physician on duty, recommended that hospital staff inform Curtis and advise her to return to the hospital if symptoms had not improved. Staff did not notify Curtis. Yet, Curtis returned to the hospital on her own and was admitted because of worsening conditions and severe sepsis.

¶5         Curtis brought two claims of medical negligence against Banner in September 2017, alleging, in part, that Banner staff "fail[ed] to properly notify [her] of the results of the blood test" which proximately caused her injuries. Curtis certified that expert testimony was needed to establish her claims and timely disclosed two *physician* expert witnesses but did not timely disclose a *nurse* expert witness. After the deadline for disclosing expert witnesses had passed, Banner filed a motion for summary judgment arguing that, without a qualified nurse expert witness, Curtis could not establish the nursing staff's conduct fell below the requisite standard of care. Curtis filed a motion under Rule 56(d) of the Arizona Rules of Civil Procedure, requesting authorization to depose "Dr. Vance as well as two nurses" before responding to Banner's motion, which the court denied.

¶6         The superior court granted summary judgment for Banner. Curtis timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

*I.      Rule 56(d) Motion for Relief*

¶7         Rule 56(d) affords a party, who "cannot present evidence essential to justify its opposition" to summary judgment, to request, among other things, the opportunity "to obtain affidavits or to take discovery" before responding to a motion for summary judgment. Ariz. R. Civ. P. 56(d)(1) and (5)(A). We review the superior court's denial of a Rule 56(d) motion for an abuse of discretion. *St. George v. Plimpton*, 241 Ariz. 163, 165, ¶ 11 (App. 2016).

¶8         Banner's motion for summary judgment raised the narrow issue of Curtis' failure to name an expert qualified to testify to nursing standard of care, including the nursing care provided by hospital staff. Although Curtis disclosed two expert witnesses, Dr. Lynette Zills, a board certified urgent care physician, and Dr. Thomas Anthony Cumbo, a board certified internal medicine physician, Curtis failed to timely disclose an expert witness who could testify to the nursing standard of care. *See* A.R.S. § 12-2604(A); *see also Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 384, ¶ 14 (2013) (the testifying expert must specialize in the same specialty or claimed specialty as the treating medical professional).

¶9         Curtis contends the superior court's denial of her Rule 56(d) motion constituted an abuse of discretion because it placed an undue burden on Curtis to sift through Banner's disclosure, provided just two

months before the summary judgment motion, in order to determine which type of expert witnesses were needed. But Curtis concedes she knew before the expert witness disclosure deadline that the conduct of hospital nurses was central to her medical negligence claim.

**¶10**　　　The superior court denied Curtis' Rule 56(d) request because: (1) "report[s] and other discovery regarding the necessity of a nursing standard of care expert were timely disclosed in August 2018, almost 60 days prior to the deadline for expert disclosure reports"; (2) Curtis "concede[s] in the Rule 56[d] motion that she knew in August, 2018, that a nurse received the blood testing results"; (3) Curtis "failed to prove that [Banner] possessed any undisclosed evidence that could provide any insight into the narrow issue raised in the [m]otion for [s]ummary [j]udgment"; and (4) "the [c]ourt was not persuaded . . . that the name of the specific nurse or nurses involved in the transmission of [Curtis'] blood test results was necessary prior to disclosure of an expert opinion report."

**¶11**　　　The court did not abuse its discretion in denying Curtis' request for more discovery because that discovery did not influence the narrow issue presented in Banner's summary judgment motion. *Ader v. Estate of Felger*, 240 Ariz. 32, 36, ¶ 7 (App. 2016). And, Curtis knew nearly two months before the expert witness disclosure deadline that she needed to establish the requisite nursing standard of care.

*II.　　Motion for Summary Judgment*

**¶12**　　　Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). On appeal, we review a grant of summary judgment *de novo*, *Dreamland Villa Cmty. Club, Inc. v. Rainey*, 224 Ariz. 42, 46, ¶ 16 (App. 2010),"view[ing] the facts and reasonable inferences in the light most favorable to the non-prevailing party," *Rasor v. Nw. Hosp., LLC*, 243 Ariz. 160, 163, ¶ 11 (2017).

**¶13**　　　In a medical negligence action, a plaintiff must prove both: (1) "[t]he health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances," and (2) "[s]uch failure was a proximate cause of the injury." A.R.S. § 12-563; *see also Ryan v. S.F. Peaks Trucking Co., Inc.*, 228 Ariz. 42, 48–49, ¶ 23 (App. 2011).

**¶14**　　　Typically, the standard of care "must be established by expert medical testimony." *Id.* at 49, ¶ 23; *Seisinger v. Siebel*, 220 Ariz. 85, 94, ¶ 33

(2009); *see also Phillips v. Stillwell*, 55 Ariz. 147, 149 (1940). The testifying expert must "specialize 'in the same specialty or claimed specialty' as the treating [medical professional]." *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 384, ¶ 14 (2013) (quoting A.R.S. § 12-2604(A)); *see also Rasor*, 243 Ariz. at 165–66, ¶ 27. "Similarly, unless a causal relationship is readily apparent to the trier of fact, expert medical testimony is normally required to establish proximate cause." *Ryan*, 228 Ariz. at 49, ¶ 23; *see also Salica v. Tucson Heart Hosp.-Carondelet, L.L.C.*, 224 Ariz. 414, 419, ¶ 16 (App. 2010). As an exception to the general rule requiring expert testimony, the standard of care need not be established by expert medical testimony if the negligence is "so grossly apparent that a layman would have no difficulty in recognizing it." *Riedisser v. Nelson*, 111 Ariz. 542, 544 (1975).

¶15 In *Potter v. H. Kern Wisner, M.D., P.C.*, 170 Ariz. 331, 335 (App. 1991), this court indicated there appears to be "a split in authority in Arizona" whether "evidence of a practice by an individual doctor or a limited group of health care professionals is []sufficient to establish the necessary standard of care." For example, in *Bell v. Maricopa Med. Center*, 157 Ariz. 192, 195 (App. 1988), this court reasoned that a jury could not conclude "that [a] hospital's violation of its [own] protocols constituted evidence of negligence unless it first found that the protocols were not merely evidence of the applicable standard, but were synonymous with it." But in *Peacock v. Samaritan Health Serv.*, 159 Ariz. 123, 127 (App. 1988), decided just two months after *Bell*, this court held that, although "a policy adopted by a health care provider will [not] always equate with the standard of care to be applied by the jury in determining if the care and supervision of a patient were negligent . . . the existence of a hospital protocol is nevertheless *some* evidence of the standard of care." (Emphasis added.) Further, when a hospital protocol exists, "[a jury] could conclude that the protocol [is] the standard of care and that the failure to follow that standard was negligence." *Id.* Whether *Bell* and *Peacock* actually conflict with one another, however, is not clear to us.

¶16 In granting summary judgment for Banner, the superior court concluded that "the issues involved with the duty of care for nursing staff in documenting and disseminating blood culture reports is not analogous to the standard of care at issue in *Peacock*." We agree. In *Peacock*, the plaintiff was suffering from a "manic episode" and admitted into a hospital's mental health unit where he needed to "be observed, monitored and watched for worsening of [] symptoms or evidence of a delirium." *Id.* at 124. Once admitted, the plaintiff "either jumped or fell through the fourth floor window of his room and suffered severe physical injuries." *Id.* at 125. The hospital had a protocol in place requiring that "the window in [plaintiff's]

room . . . be secured by a lock mechanism." *Id.* at 127. It was not. *Id.* This court reasoned that evidence of the "[hospital's] own protocol *together with reasonable inferences that can be drawn from the act of placing a reportedly suicidal patient in a fourth floor room with an unsecured window*" could be enough for a jury to conclude that the protocol was the standard of care. *Id.* (Emphasis added.)

**¶17**        Here, however, "reasonable inferences" as to the time in which blood culture results ought to be relayed to an attending physician, or the patient herself, are not commonly known, but instead require medical training and knowledge. Consequently, because a jury could not conclude, absent expert testimony, that Banner's own protocol is synonymous with the standard of care, the superior court appropriately granted summary judgment for Banner.

## CONCLUSION

**¶18**        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA

6